## A02A1092. XULU v. THE STATE.
(568 SE2d 74)

BLACKBURN, Chief Judge.

Solomon Xulu was convicted by a jury of child molestation, and we affirm. He enumerates multiple errors. We set forth below those with some possibility of merit.

1. Xulu questions the sufficiency of the evidence. The evidence shows that on October 6, 1994, the victim, D. M., a four-year-old girl, was playing hide-and-seek with her sister and two other little girls who lived next door. Xulu was also playing in the game. During the game, Xulu grabbed D. M. and pulled her into some bushes behind the house. Here, he removed her underwear and touched her genitals.

Shortly thereafter, D. M.'s mother, Elizabeth, returned from shopping and called for her daughters. At this point, Xulu put his hand over D. M.'s mouth and told her not to tell what had happened. When Elizabeth did not see D. M., she began looking for her. She saw her running up from between the houses with a shocked look on her face and disheveled clothes; Xulu was following closely behind. Elizabeth took D. M. into the house and discovered that her underwear was missing and that there was mud on her buttocks and thighs.

When she asked D. M. what had happened, D. M. told her what Xulu had done. The evidence was sufficient to support Xulu's conviction.

2. Xulu sets forth various grounds for his argument that the trial court erred by denying his several requests for a continuance. There was no error.

Xulu complains that the State did not furnish him a copy of a report of the medical examination of D. M. conducted by a physician, Dr. Patterson, at Grady Hospital. The transcript reveals that the State neither knew of nor was in possession of Dr. Patterson's report of the medical examination prior to trial. Dr. Patterson found the file at his home; upon discovering the file, he made it available to the State, and the State immediately, and before opening statements, furnished Xulu with a copy.

The State is required under the statute to make available to a defendant only those medical examination reports which it intends to introduce into evidence in its case-in-chief or in rebuttal. Here, the State, unaware of the report, had no intention of using it as either direct or rebuttal evidence until the day before trial.

Secondly, OCGA § 17-16-1 (1) requires that an item be within the possession, custody, or control of the prosecuting attorney or any law enforcement agency involved in the investigation. Here, the report was not in the possession of either the prosecuting attorney or the police, nor was it in the possession of the hospital. As the State had no knowledge of the existence of the statement, it had no reason to seek to obtain same.

Beyond this, the trial judge ascertained that defense counsel had been provided a copy of the report the day before Dr. Patterson's testimony, and the transcript makes clear that defense counsel had a chance to review the report and made use of it in cross-examining Dr. Patterson. As Xulu can point to no harm that resulted from his being denied a continuance on this ground, we cannot say that the trial court erred in denying same.

Xulu also argues that the State's failure to produce the statements of two witnesses alleging a similar transaction provided additional grounds for a continuance. The first statement which Xulu claims the State failed to produce is an "exculpatory medical exam" of the child victim in the similar transaction. Xulu assumes that because the child's mother took her child to the doctor, there must have been a medical examination report and further assumes that the report would have exculpated him.

There is no evidence that any such medical report exists. The trial judge allowed Xulu's counsel to prepare a court order granting him access to any records the child's doctor might have and also advised counsel that if he needed to recall the witness, he would be allowed to do so. However, nothing was produced by Xulu establish-

ing that these records actually existed, much less that they were exculpatory. The State is not obligated to do a defendant's investigatory work for him.

Xulu also claims that a continuance should have been granted because the State failed to turn over to him a copy of D. M.'s videotaped statement. The State was not required to provide Xulu with a copy of the tape but, under the statute, was only required to allow him to view it at an agreed-upon time. When Xulu finally made a request to view the tape, the trial court recessed and the State provided the tape so that he could do so.

Xulu argues that a continuance should have been granted because he did not have enough time to prepare for trial. "A statement by counsel for the defendant that he has not had sufficient time to investigate and prepare the defense is a mere conclusion. Questions of this nature must of necessity be entrusted to the discretion of the trial judge." *Hill v. State*.[1] In this case, Xulu's counsel was appointed, and filed numerous motions, more than seven months prior to trial. The case had been on several previous trial calendars. Xulu's counsel received discovery more than ten days before commencement of trial. The trial court concluded that Xulu's counsel had adequate time to prepare for trial. We cannot say that the trial court abused its discretion in this ruling.

3. Xulu contends that the trial court erred in a variety of ways in admitting evidence of a similar transaction.

First, there is no merit to Xulu's argument that the State failed to satisfy the first prong of *Williams v. State*[2] because it failed to specify the purpose for which the similar transaction evidence was being offered. The prosecution stated that the purpose for admitting this evidence was to show a course of conduct on behalf of the defendant and his bent of mind. Each of these has been identified as one of the limited purposes for which evidence of similar transactions may be introduced. See *Bailey v. State*;[3] *Turner v. State*.[4]

The State also established the second and third prongs of the *Williams* test. The State informed the trial court that the child victim in the similar transaction identified Xulu as the person who touched him, calling him Uncle Sky, as did the victim in the case-in-chief and other children in the neighborhood. Xulu does not dispute this identification. Evidence of such facts establishes that the accused committed the independent offense. As to sufficient similarity, the transaction the State sought to introduce involved a four-year-old child who

---

[1] *Hill v. State*, 161 Ga. App. 346 (1) (287 SE2d 779) (1982).
[2] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).
[3] *Bailey v. State*, 207 Ga. App. 283, 284 (427 SE2d 612) (1993).
[4] *Turner v. State*, 245 Ga. App. 476, 478 (538 SE2d 125) (2000).

lived in the same neighborhood as D. M. and who was molested behind his or a neighbor's house; the defendant pulled the child's pants down and placed his hand on his genitals. We believe that sufficient similarity was clearly set forth. Moreover, it is the established rule in Georgia that "the sexual molestation of young children, regardless of sex or type of act, is sufficient similarity to make the evidence admissible." (Punctuation omitted.) *Adams v. State.*[5]

Xulu complains that the trial court did not view the videotaped statement of the child victim of the similar transaction before ruling on the admissibility of the similar transaction.

> While a defendant has a right to a hearing on the similarity of other transactions sought to be admitted into evidence, it need not be a full evidentiary hearing and it is sufficient if the prosecutor shows the requisite similarity of the previous transaction by stating in his place the nature of the evidence to be given regarding the similar transaction.

*Johnson v. State.*[6]

As to any inconsistencies in the evidence, the State correctly argued that Xulu had the right to cross-examine the witness regarding the similar transaction and that any inconsistencies went to the weight rather than the admissibility of the evidence.

4. Xulu contends that the trial court erred by refusing to hear his evidence at a requested pre-trial *Gregg v. State*[7] hearing before admitting out-of-court child hearsay, and by admitting the out-of-court child hearsay without sufficient indicia of reliability.

As to Xulu's contention that the trial court was required to conduct, at his request, a pre-trial evidentiary hearing pursuant to *Gregg v. State*, the decisions make clear that "OCGA § 24-3-16 does not require a hearing to determine 'indicia of reliability' be held prior to receiving the testimony." *Reynolds v. State.*[8] Moreover, there is no requirement that the trial court make a specific finding of "sufficient indicia of reliability" in order for the out-of-court statements of child victims to be admissible.

Xulu also argues that the trial court erred in admitting the hearsay evidence because the out-of-court statements of the two child victims did not in fact contain sufficient indicia of reliability. Review of the trial court's admission of the hearsay statement is under the clearly erroneous standard.

---

[5] *Adams v. State*, 208 Ga. App. 29, 32 (430 SE2d 35) (1993).
[6] *Johnson v. State*, 204 Ga. App. 453 (1) (419 SE2d 741) (1992).
[7] *Gregg v. State*, 201 Ga. App. 238 (411 SE2d 65) (1991).
[8] *Reynolds v. State*, 257 Ga. 725 (2) (363 SE2d 249) (1988).

Xulu objects first to the statements made by D. M. to Dr. Patterson and Detective Davis. As to Dr. Patterson, the record shows that D. M. was taken to him for an examination shortly after her mother discovered that she had been molested. The only other person present at the examination was the victim's mother. Dr. Patterson stated that, in conducting his examination of D. M., he avoided steering or coaching her into saying something that did not happen. His notes indicated that she was cooperative and did not appear to be in any distress. He also testified that she was able to articulate what had happened to her. In addition to telling Dr. Patterson what had happened, D. M. also used anatomically correct dolls to indicate to him what had been done. Under these circumstances, there were sufficient indicia of reliability for the trial court to admit Dr. Patterson's testimony.

As to the out-of-court statement made by D. M. to Detective Davis, we find little in the record which would have allowed the trial judge to conclude that the circumstances surrounding that statement provided sufficient indicia of reliability. The trial transcript reveals only that Detective Davis interviewed the victim at his office shortly after she was molested and that he typed out her story as she related it to him.

Assuming that the out-of-court statement was inadmissible, any error was harmless. Detective Davis testified that D. M. told him that Xulu took off her panties and touched her vaginal area. Dr. Patterson also testified that D. M. told him that Xulu pulled down her panties and touched her private part, and the victim's mother likewise testified that her daughter had told her that Xulu had pulled down her panties and touched her. Thus, Detective Davis's testimony was merely cumulative of other testimony presented at trial. *Kelly v. State*.[9]

Further supporting the admissibility of D. M.'s out-of-court statements to both Dr. Patterson and Detective Davis is the fact that D. M. took the stand and testified. Xulu had the opportunity to, and did, in fact, cross-examine her about the out-of-court statements.

Xulu argues that the out-of-court statements made by the child victim in the similar transaction incident do not possess sufficient indicia of reliability. The first person to whom this child spoke was his mother. The mother indicated that one evening after she had fed and bathed her child, she asked him, as he lay in her bed, whether Xulu, or "Uncle Sky," had ever touched him. The child told his mother that Xulu had touched him in a variety of places such as on his head, arms, and legs. When his mother asked him if Xulu had

---

[9] *Kelly v. State*, 197 Ga. App. 811, 814 (399 SE2d 568) (1990).

touched him anywhere else, he told her that Xulu had touched his "weewee" and his "booboo," meaning his penis and his rectum. He also told his mother that he had not told her earlier because he was afraid of Xulu.

While the indicia of reliability with respect to this out-of-court statement are minimal, we find, because the similar transaction child victim took the stand at trial and Xulu cross-examined him, that the trial court's admission of the statement was not clearly erroneous.

Xulu also objects to this victim's statement to Detective Davis. The victim told Detective Davis that Xulu touched his "weewee" and his rectum, the same thing he told his mother. Any error in admitting the statement made to Davis is harmless because it is cumulative of other testimony adduced during the trial.

Xulu's primary basis for arguing that the out-of-court statements of both children lack sufficient indicia of reliability is that there are inconsistencies between their out-of-court statements and their testimony at trial. Any inconsistencies in the statements were a matter for the jury's consideration in weighing the evidence, not a matter of admissibility.

5. Xulu's next argument is that there was a fatal variance between the allegations of the indictment and the evidence at trial. Xulu contends that because the indictment specified that the offense was committed by his "removing her panties and placing his hands upon and near the female sex organ," while the victim's testimony at trial was that she had had vaginal intercourse with him, there was a fatal variance between the allegations and the proof.

D. M.'s mother, Dr. Patterson, and Detective Davis all testified that D. M. told them that Xulu had pulled down her panties and placed his hand on her vaginal area. Since "the allegations and the proof in the case at bar substantially corresponded, such that it cannot be said that [Xulu] was misled or prejudiced," any variance was not fatal. *Winter v. State*.[10]

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED JUNE 13, 2002 —
RECONSIDERATION DENIED JULY 2, 2002.

*William S. Callahan, Steven E. Phillips*, for appellant.

---

[10] *Winter v. State*, 171 Ga. App. 511, 512 (1) (320 SE2d 233) (1984).

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Christopher M. Quinn, Assistant District Attorneys,* for appellee.