## A02A2458. IVEY v. THE STATE.
(574 SE2d 908)

JOHNSON, Presiding Judge.

A jury found Billy Joe Ivey guilty of two counts of aggravated child molestation and one count of child molestation regarding his five-year-old son. The jury acquitted him of another count of child molestation. On appeal, Ivey contends the trial court erred in admitting hearsay evidence of sexual molestation, and the evidence was insufficient to support the verdict. These enumerations of error lack merit, and we affirm Ivey's convictions.

Viewed in a light most favorable to support the jury's verdict, the evidence shows that during a conversation about good touches and bad touches, the victim spontaneously told his school counselor, "My dad sucked my thing." The counselor cautioned the victim about telling the truth and then asked the victim where the incident had taken place. The victim told the counselor it had happened in his father's bed.

The next day, Nickie Denham, with the Putnam County Department of Family & Children Services, spoke with the victim. She used a coloring book to discuss the issue of good touch and bad touch. Denham established that the victim knew the difference between the truth and a lie, established that the victim was able to communicate a name for his body parts, and asked the victim if anyone had ever given him a bad touch. The victim responded that Ivey had "sucked my thing" a lot of times. When asked if anyone had ever touched his private parts, the victim responded that his father had. Further questioning revealed that the victim had performed oral sex on Ivey and that Ivey had hurt the victim's anus with his penis. The victim gave details about when the incident occurred. He also detailed the actual incident, describing "his daddy's thing and how it looked, that it was big and hard, and that white stuff came out of it."

During a subsequent interview by Denham, the victim described

the same allegations. The coloring book used during this interview, which was identical to the one used during the first interview, was admitted into evidence. Detective Dana Jones was present during the second interview and recounted the victim's statements during the interview.

In addition, Dr. Kirk Holmes testified about a psychological evaluation that he completed on the victim. According to Holmes, the victim understood the difference between the truth and a lie. The victim told Holmes that Ivey had touched his private parts at night in his father's room. The victim told Holmes that Ivey directed him to perform oral sex on Ivey, that Ivey fondled the victim, and that Ivey anally penetrated the victim.

Dr. Susan Lee Jones testified that she physically examined the victim, that the victim's anus was "widely patent," and that the victim had scarring and a gaping hole at his anus. According to Jones, the gaping hole was unexpected. She further testified that "[t]o have scarring where there's actual gaping like this, there has to be repeated penetration and it's very painful."

1. Ivey contends the trial court erred in admitting hearsay evidence of sexual molestation. Specifically, Ivey argues that (a) there was no evidence that the victim's statements to Denham were reliable, and (b) Denham was not a reliable reporter of the victim's statements.

(a) OCGA § 24-3-16 provides that a child's out-of-court statement describing any act of sexual abuse is admissible in evidence by the testimony of another person if the child is available to testify and if the court finds that the circumstances of the statement provide sufficient indicia of reliability. Ivey contends the trial court erred in admitting the victim's hearsay statements because it failed to find on the record that the statements were reliable. We disagree.

There is no requirement that the trial court make a specific finding of "sufficient indicia of reliability" in order for the out-of-court statements of child victims to be admissible.[1] The question is whether, after both parties have rested, the record contains evidence which would support a finding of reliability.[2] Thus, to the extent that Ivey argues that the trial court erred in failing to determine the reliability of the victim's statements to Denham prior to allowing her testimony, we reject his argument. Further, we conclude that the record contains evidence supporting findings of reliability in connection with the testimony of Denham.

The record reveals that the victim first made a spontaneous

---

[1] *Xulu v. State*, 256 Ga. App. 272, 275 (4) (568 SE2d 74) (2002).
[2] *Nelson v. State*, 255 Ga. App. 315, 317 (1) (565 SE2d 551) (2002).

report of abuse to his school counselor. He then gave Denham more details in an interview, and repeated his earlier statements to Denham in a subsequent interview. Additionally, the testimony of the school counselor, the detective, the psychologist, and the medical doctor corroborated the statements of the victim and the testimony of Denham. The victim's description of the incidents underlying the crimes charged remained consistent every time he gave a statement to an adult prior to trial. And the medical evidence corroborated the victim's testimony. Moreover, the record shows that the victim knew the difference between the truth and a lie, that the interviews by Denham were conducted in a stress-free environment, and that the victim testified at trial and was subject to cross-examination. There were sufficient indicia of reliability for the trial court to admit the victim's out-of-court statements.

(b) Ivey contends the victim's statements lack reliability because Denham was not a reliable reporter of the statements. According to Ivey, Denham's memory was faulty and she could not produce the coloring book used in the first interview with the victim. Ivey also contends the record shows that Denham coached the victim. These assertions ignore the fact that the victim first spontaneously reported the abuse to his school counselor. This statement predates any allegedly solicited statement. Moreover, Ivey fails to cite any case, and we can locate no case, where the credibility of the reporter is considered as a circumstance regarding the reliability of the child victim's out-of-court statement. The reliability of a reporter's memory would go to the weight that a jury might give the evidence, not its admissibility. We find no error in the trial court's admission of the victim's out-of-court statements to Denham.

2. Ivey contends the evidence was insufficient to support his convictions because of "the demonstrated unreliability of Nickie Denham's memory and the trial court's failure to require that the record include facts from which it could assess [the victim's] reliability." Based on our holding in Division 1, we find no merit in this argument. Reviewed in a light most favorable to the verdict, the evidence amply supported Ivey's convictions for two counts of aggravated child molestation and one count of child molestation.[3]

*Judgment affirmed. Blackburn, C. J., and Miller, J., concur.*

DECIDED DECEMBER 4, 2002.

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Steele v. State*, 248 Ga. App. 441, 443 (3) (546 SE2d 547) (2001); *Smith v. State*, 210 Ga. App. 634, 635 (2) (437 SE2d 333) (1993).

*Adams & Ford, Francis N. Ford*, for appellant.
*Fredric D. Bright, District Attorney, Dawn M. Baskin, Assistant District Attorney*, for appellee.