## A03A0761. INGRAM v. THE STATE.
### (585 SE2d 211)

PHIPPS, Judge.

Vincent Ingram was charged with child molestation, aggravated child molestation, and rape of A. W. A jury found him guilty of child molestation and not guilty of the other charges. The court sentenced him to 20 years imprisonment. His motion for new trial was denied, and he appeals. Ingram contends that the state violated his right to due process by failing to preserve "potentially exculpatory evidence." Further, he claims that the court erred in admitting hearsay at the trial, in charging the jury, in considering certain testimony at the presentencing hearing, and in determining that his trial counsel provided effective assistance. Because Ingram has failed to show reversible error, we affirm.

A. W. is the granddaughter of Ingram's wife. At the time of the August 1998 incident, A. W. was about five years old and was living with Ingram, his wife, and three of her children. At the time of trial, A. W. was eight years old. She testified that on the morning in question, Ingram woke her up and told her to go to the bathroom. When she returned, Ingram told her to go to his room, and she did. She stated that when she got onto her grandmother's side of the bed, Ingram pulled down her panties, got on top of her, and put his "bell" on her "private." She recalled that his "bell" had "little white stuff" on it. A. W. testified that after the encounter with Ingram, she pulled up her panties.

A. W. returned to her bed, and her crying woke up her aunt. A. W.'s aunt, who was 16 years old at trial, testified that A. W. told her that Ingram had pulled out his "bell," the name A. W. used for penis, and "tried to go inside her and she [had] seen white stuff on the blue rag."

A. W.'s aunt called Ingram's wife, who immediately came home from work. Ingram's wife testified that A. W. told her that Ingram had pulled down her panties and rubbed his "thing" on her leg, buttocks, and "kittycat," a name she had taught A. W. to use for her "private area." A. W. also told her that Ingram had wiped her with a bath cloth because of "some white sticky stuff." A. W. showed her grandmother the bath cloth. A. W. was wearing a gown and panties. Mrs. Ingram examined A. W.'s panties and the bath cloth, but did not see anything on them. She put them in a bag and took A. W. and the bag to a hospital. One of the two physicians who examined A. W. testified

that A. W. had redness around the urethra and vaginal area and tearing of the skin around her anus.

That same day, A. W. described to an investigating police officer that Ingram had placed his penis in her vaginal area. The officer also interviewed one of the examining doctors and Mrs. Ingram. Mrs. Ingram testified that she had told the officer that she had the panties and the bath cloth, but that the officer had declined to take them, telling her that they were not needed. The officer testified that he did not recall that Mrs. Ingram had presented him with any items.

Ingram's defense was that he had not had any sexual contact with A. W. He testified that he woke up A. W. to use the toilet, that he then dozed off, and that when he woke up, A. W. was on his bed watching television as she had done numerous times. Ingram recalled that he had then dressed and left for work.

1. Ingram contends that the state violated his right to due process by failing to preserve "potentially exculpatory evidence." Pointing to the panties and bath cloth, Ingram complains that "the only two pieces of physical evidence that could have been tested for semen were not taken by the investigating officer."

The failure to preserve evidence does not constitute a denial of due process of law, unless it is shown that the missing evidence was potentially useful to the defense and was destroyed in bad faith on the part of the police.[1] Here, even if the items had potentially exculpatory value, Ingram has failed to show that the officer acted in bad faith by not preserving them. This claim of error is without merit.[2]

2. Ingram contends that the court erred in allowing Mrs. Ingram to read from her statement to the police that the doctors had told her that while A. W. had not been penetrated, someone had attempted to penetrate her.

The complained-of testimony was cumulative of admissible medical testimony that corroborated A. W.'s testimony and of out-of-court statements made by A. W. to her aunt and grandmother. Where, as here, legally admissible evidence of the same fact is introduced, the erroneous admission of hearsay is harmless.[3]

A. W.'s hearsay statements are admissible pursuant to OCGA § 24-3-16, which provides,

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse per-

---

[1] *Arizona v. Youngblood*, 488 U. S. 51, 58 (109 SC 333, 102 LE2d 281) (1988); *Dixon v. State*, 275 Ga. 232, 233 (4) (564 SE2d 198) (2002).

[2] *Arizona*, supra; *Dixon*, supra.

[3] *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999); *Xulu v. State*, 256 Ga. App. 272, 276-277 (568 SE2d 74) (2002).

formed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

There is no requirement that the trial court make a specific finding of sufficient indicia of reliability for out-of-court statements of a child victim to be admissible.[4] The statutory requirement is met if, after both parties have rested, the record contains evidence which would support such a finding.[5]

The record shows that A. W. was about five years old at the time of the incident. During her initial outcry to her aunt, A. W.'s demeanor showed that she was upset. She was at home when she made the statements to her aunt and grandmother, and there was no evidence that she was forced to make them or that she was coached regarding what to say. The language she used was appropriate for a child her age. And her accounts to her aunt and her grandmother were consistent.

Further supporting the admissibility of A. W.'s out-of-court statements is the fact that she took the stand and testified. "If the defense counsel had the opportunity to confront and cross-examine the witness who made the out-of-court statement, the statement was admissible."[6]

3. Ingram contends that the court erred in charging the jury, "no corroboration or verification of a child's testimony is required." Ingram argues that the charge invited the jury to find him guilty based merely on the fact that A. W. took an oath and then pointed to him as the perpetrator, rather than using a reasonable doubt standard. We disagree.

> Where a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, a reviewing court will not disturb a verdict amply authorized by the evidence. There is no error where it

---

[4] *Xulu*, supra at 274 (4).

[5] *Flowers v. State*, 255 Ga. App. 660, 662 (3) (566 SE2d 339) (2002); see also *Gregg v. State*, 201 Ga. App. 238, 240-241 (3) (b) (411 SE2d 65) (1991) (setting forth factors for consideration when determining whether child hearsay statements provide sufficient indicia of reliability pursuant to OCGA § 24-3-16).

[6] (Citations and punctuation omitted.) *In the Interest of K. C.*, 258 Ga. App. 363, 365 (1) (b) (574 SE2d 413) (2002); see *Xulu*, supra at 276.

is unlikely that the instructions considered as a whole would mislead a jury of ordinary intelligence.[7]

Georgia law does not require corroboration of a child molestation victim's testimony.[8] The record shows that A. W. was sworn in the jury's presence. The court adequately charged the jury on credibility and reasonable doubt, and the instructions, considered as a whole, would not mislead a jury of average intelligence. Further, the verdict was amply authorized by the evidence. Under these circumstances, we find no error in the charge as a whole.[9]

4. Ingram contends that the court erred in considering inadmissible testimony in sentencing him. At the presentencing hearing, the prosecutor cross-examined Mrs. Ingram and elicited testimony that A. W.'s aunt, who was not present at the hearing, had told her that Ingram had "rubbed her across the side of her breast."

(a) Ingram argues that the court erred by failing to advise his wife that she could not be compelled to testify against him about the alleged accusation of A. W.'s aunt. Ingram asserts that the marital privilege was available to his wife because her testimony was unrelated to "the specific act for which [he was] charged."[10] The court, however, had no obligation to inform his spouse whether the privilege under that Code section was available, and where a spouse takes the stand and testifies voluntarily, it is presumed that she has waived the marital privilege.[11]

(b) Ingram argues that the evidence was inadmissible because the state failed to notify him before trial that it would use the evidence in aggravation of punishment as required by OCGA § 17-10-2. Ingram's failure to object at the presentencing hearing constitutes a waiver of his right to notice under that Code section.[12]

(c) Ingram argues that the evidence was inadmissible because it was hearsay. "[H]earsay testimony is not only inadmissible but wholly without probative value, and its introduction . . . does not give it any weight or force whatever in establishing a fact."[13]

---

[7] (Citations and punctuation omitted.) *Pullins v. State*, 232 Ga. App. 267 (1) (a) (501 SE2d 612) (1998).

[8] See *Cantrell v. State*, 231 Ga. App. 629, 630 (500 SE2d 386) (1998).

[9] *Pullins*, supra; *Cantrell*, supra.

[10] OCGA § 24-9-23 (b).

[11] *Smith v. State*, 254 Ga. App. 107, 108 (1) (561 SE2d 232) (2002).

[12] *Turner v. State*, 259 Ga. App. 902-903 (1) (578 SE2d 570) (2003); see also *Pearce v. State*, 256 Ga. App. 889, 890-891 (1) (570 SE2d 74) (2002) (OCGA § 17-10-2 did not preclude trial court from considering defendant's criminal conduct of which the state had no knowledge until just before presentencing hearing, where evidence in aggravation was in-court testimony of a witness, and the defendant was afforded a chance to cross-examine witness).

[13] *Higgins v. Trentham*, 186 Ga. 264 (1) (197 SE 862) (1938); *Humphrey v. State*, 257 Ga. App. 312, 313 (1) (571 SE2d 187) (2002).

In determining what sentence to impose upon a defendant, a trial court may consider any evidence that was *properly admitted* during the guilt-innocence phase of the trial. Further, sentencing courts are authorized to consider in aggravation any *lawful evidence* which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes.[14]

Ingram points out that at trial, the state presented evidence of a single act and that after Mrs. Ingram's testimony at the presentencing hearing, the court stated, "Based upon the evidence which I heard during the course of this trial, it is my belief that you may be a danger to the community. You will be sentenced to 20 years to serve." He urges that the lawful evidence failed to present a basis for the court to conclude that he posed a danger to the community and asserts that therefore the court must have considered the hearsay in imposing such a severe sentence.[15]

"There is a presumption, in the absence of a strong showing to the contrary, that the trial judge, when sitting without a jury, separates the legal evidence from facts not properly in evidence in reaching his decision."[16] Although the trial court heard Mrs. Ingram's hearsay testimony, Ingram has not made a "strong showing" that the court relied on it in sentencing him. Without more, the presumption remains unrebutted.[17]

5. Ingram contends that the court erred in determining that his trial counsel provided him effective assistance.

In order to establish ineffective assistance of counsel, [Ingram] was required to show that his trial counsel's performance was deficient and that such deficient performance so prejudiced his defense that a reasonable probability existed that the outcome of the trial would have been different in the absence thereof. Absent a showing of prejudice, no further inquiry need be made into counsel's alleged deficiency. A trial court's finding that a defendant has been

---

[14] (Citations and punctuation omitted; emphasis in original.) *Phillips v. State*, 241 Ga. App. 689, 690 (527 SE2d 283) (1999).

[15] See OCGA § 16-6-4 (b) ("person convicted of a first offense of child molestation shall be punished by imprisonment for not less than five nor more than 20 years").

[16] (Punctuation and footnote omitted.) *Humphrey*, supra at 314.

[17] See *Watkins v. State*, 191 Ga. App. 87, 92 (8) (381 SE2d 45) (1989); compare *Humphrey*, supra (record showed that trial court relied upon hearsay statement in denying defendant first offender status).

afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.[18]

Ingram claims that trial counsel provided ineffective assistance because he failed to object to the hearsay discussed in Division 2.[19] As we have found the testimony cumulative and therefore harmless, Ingram has not shown a reasonable probability that but for counsel's alleged deficiency, the outcome of the proceedings would have been different.

Ingram also claims that trial counsel provided ineffective assistance because he failed to object to Mrs. Ingram's testimony at the presentencing hearing. But as we determined in Division 4,[20] there is no showing that the improper evidence prejudiced Ingram.

Accordingly, the trial court's determination that Ingram received effective assistance of counsel was not clearly erroneous.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JULY 14, 2003.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.

---

[18] (Citations and punctuation omitted.) *Chancey v. State*, 258 Ga. App. 319, 321 (4) (574 SE2d 383) (2002).

[19] Supra.

[20] Supra.