597 S.E.2d 505 (2004)
266 Ga.App. 405
EVANS
v.
The STATE.
No. A04A0287.
Court of Appeals of Georgia.
March 19, 2004.
*506 Robert D. Wilson, Columbus, for appellant.
J. Gray Conger, District Attorney, Margaret E. Bagley, Julia A. Slater, Assistant District Attorneys, for appellee.
RUFFIN, Presiding Judge.
A jury found Norris Evans guilty of aggravated sodomy, two counts of terroristic threats, and rape, but acquitted him of false imprisonment. Evans appeals, challenging the sufficiency of the evidence supporting his convictions. He also argues that the trial court erred in denying his motion to sever and in refusing to grant a mistrial. Finally, he claims that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm.
1. On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and we must construe the evidence in a light most favorable to the verdict.[1] We neither weigh the evidence nor determine witness credibility, but merely consider whether the evidence was sufficient for a rational trier of fact to find the essential elements of the crimes beyond a reasonable doubt.[2]
Viewed in this manner, the evidence shows that, in early 1996, 14-year-old T.E. lived with her grandmother in Atlanta. T.E. knew Evans through her Aunt Doralee, who had a child with Evans. Sometime in March 1996, Evans and Aunt Doralee took T.E. to live with them in Columbus, where she resided intermittently in one of two houses owned or occupied by Evans. Evans and Aunt Doralee, who also lived in Evans' homes, did not enroll her in school or allow her to contact her grandmother. Evans also threatened to kill T.E. and her family if she moved from his homes, and on one occasion he placed a gun against her head.
While T.E. lived in Evans' homes, he forced her to have sex with him almost every other day. Evans would tell T.E. to go to whichever home was not occupied by her aunt and other residents, then have intercourse with her. On multiple occasions, he also placed his penis in T.E.'s mouth. Although T.E. told Evans that she did not want to have sex with him, the conduct continued. At one point, Evans asked her to have sex with another man for money, but she refused.
On April 28, 1996, T.E. and several other people were at one of Evans' houses when Evans brought home another girl. At Evans' request, T.E. and the others left the house, and Evans stayed with the girl. According to T.E., Evans appeared at his other home four or five hours later with a stab wound to the chest, claiming that the girl had attacked him. He stated that he was going to "get" the girl, picked up his gun, and left. After he returned, the police arrived. Evans initially ran from the police, but he came back and was arrested.
Seventeen-year-old T.F. testified that she was the girl Evans brought home on April 28, 1996. At that time, T.F. lived with her mother and two sisters, Kenya and Keesha, and she knew Evans by the name "Pimp." According to T.F., she gave Evans her telephone number so that he could call her if he needed a babysitter for his son. She visited *507 his houses a few times prior to April 28, 1996, to discuss the possibility of babysitting.
On April 28, T.F. accompanied Evans to his home, and Evans asked the occupants to leave. At that point, Evans told T.F. that he "was tired of playing games" with her and that if she said "no" to him, he would "destroy" her. T.F. believed that Evans was threatening to kill her. Evans also told her that he wanted her to work as a prostitute for him. He then took off his clothes and told T.F. to undress. When T.F. began to cry, he stated that she would never see her family again. Fearful of Evans, T.F. removed her clothing, and Evans began to touch her. He instructed her to put her mouth on his penis, and she complied because she did not want him to hurt her.
A short time later, Evans began to go to sleep, and T.F. snuck out of the room. She found a knife and a bottle of bleach, returned to Evans, stabbed him in the chest, and poured bleach on him. Unable to locate her shoes, T.F. then fled the house barefoot. She ran to a nearby church and called the police. Responding officers found T.F. at the church, shaking, visibly upset, and without shoes.
Later that evening, Evans approached T.F.'s sister, Keesha, near her home in a trailer park. Clutching his chest and exuding anger, Evans called Keesha a derogatory name and instructed her to come to him. He then threatened to kill her and her family. Frightened, Keesha ran. Evans gave chase, but Keesha managed to hide under a trailer. T.F.'s other sister, Kenya, saw Evans, who was "shaking" and acting "crazy," chasing Keesha and asked what he was doing. He responded that he had been stabbed and that if he could not catch Keesha, he would kill Kenya and her two children. Kenya immediately reported the incident to the police, who asked whether T.F. was her sister. Officers then took Kenya to the church where police were interviewing T.F.
T.F. showed the officers the house where the assault occurred, and police obtained consent to search the premises. In a bedroom, officers found a large bent steak knife, a puddle of bleach, a bloody blanket, and a bloody towel. They also located T.F.'s shoes under a pile of clothes in a closet.
The jury found Evans guilty of committing aggravated sodomy on T.F., making terroristic threats against Keesha and Kenya, and raping T.E. It acquitted Evans of falsely imprisoning T.E.
On appeal, Evans argues that the evidence was insufficient to support his convictions. He primarily claims that the State's witnesses, particularly the victims, lacked credibility. As noted above, however, the jury, not this Court, is tasked with resolving credibility issues.[3] And construed favorably to the verdict, the evidence supports Evans' convictions.
(a) Aggravated sodomy. A person commits sodomy "when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth... of another."[4] Aggravated sodomy results when a person" commits sodomy with force and against the will of the other person."[5] As we recently noted, "[t]he term force includes not only physical force, but also mental coercion, such as intimidation."[6] In this case, T.F. testified that Evans forced her to perform oral sex on him against her will, using threats and intimidation. Such evidence supports the jury's guilty verdict as to aggravated sodomy.[7]
(b) Terroristic Threats. The jury found Evans guilty of two counts of terroristic threats, one relating to the threat made to Keesha, and the other relating to the threat toward Kenya. Under OCGA § 16-11-37(a), a person makes a terroristic threat "when he or she threatens to commit any crime of violence ... with the purpose of terrorizing another... or in reckless disregard of the risk of causing such terror." A conviction for *508 this crime cannot stand "on the uncorroborated testimony of the party to whom the threat is communicated."[8] Corroboration, however, may be provided by direct or circumstantial evidence.[9] Furthermore,
the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value.[10]
Keesha and Kenya both testified that Evans threatened to kill them. And the testimony of each sister adequately corroborated the other. Kenya testified that she saw Evans acting "crazy," chasing Keesha through the trailer park, thus providing corroboration for Keesha's description of events. Keesha's similar testimony regarding the chase and Evans' demeanor corroborated Kenya's description. In light of this evidence, the jury was authorized to find Evans guilty on both counts of terroristic threats.[11]
(c) Rape. A person commits rape by having carnal knowledge of a female forcibly and against her will.[12] Carnal knowledge is defined as " any penetration of the female sex organ by the male sex organ."[13] T.E. testified that Evans forced her to have sex with him, that she did not want to engage in such conduct, and that his penis penetrated her vagina during sex. She also testified that Evans threatened to kill her and her family if she left his home. Such evidence authorized the jury's verdict as to rape.[14]
2. Before trial, Evans moved to sever the rape and false imprisonment charges relating to T.E. from the other counts involving T.F. and her sisters. The trial court denied the motion, and Evans enumerates this ruling as error.
"Where criminal offenses are joined solely on the ground that they are of the same or similar character, the defendant has a right to have the offenses severed. However, where the offenses are so similar that they show a common scheme or plan or have an identical modus operandi, severance is discretionary with the trial court."[15] When exercising this discretion, the trial court "should consider whether, in light of the number of offenses charged and the complexity of the evidence, the fact-trier will be able to distinguish the evidence and apply the law intelligently to each offense."[16]
Although Evans argues on appeal that the two charges involving T.E. are unrelated to the remaining counts, the evidence shows otherwise.[17] Despite Evans' claim, the incidents involving T.E. and T.F., both of which occurred around the same time and in one of Evans' homes,[18] are not merely similar in *509 character. They demonstrate a common scheme by Evans to obtain sexual services from teenaged girls through threats and to keep those girls under his control, possibly for prostitution. Under these circumstances, Evans had no right to a severance.[19] Furthermore, we find no abuse of discretion in the trial court's refusal to sever the offenses. We note that, given Evans' acquittal on the false imprisonment charge, the jury clearly was able to distinguish the evidence and apply the law intelligently to each offense.[20]
3. Finally, Evans raises two claims of error relating to T.F.'s unresponsive answer to one of the State's questions. At trial, the State asked T.F. whether she had spent time alone with Evans in one of his houses prior to April 28, 1996. After responding "yes," T.F. added that Evans did not want anyone to find the house "because he had a lot of dope around the place." Defense counsel objected to the reference to "dope" and moved for a mistrial. The trial court denied the motion, but instructed the jury to disregard the answer as unresponsive and irrelevant. Defense counsel did not renew his mistrial request following the curative instruction.
(a) Evans first argues that the trial court erred in failing to grant a mistrial. As discussed above, however, defense counsel did not renew his motion for mistrial after the trial court's curative instructions. Accordingly, this claim of error has been waived.[21]
(b) Evans further argues that his trial counsel was ineffective in failing to renew the motion for mistrial. To prevail on this claim, Evans must "show that trial counsel's performance fell below a reasonable standard of conduct and that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel."[22]
Pretermitting whether counsel performed deficiently, Evans cannot demonstrate prejudice. The record shows that T.F.'s unresponsive answer was not the only reference to drugs at Evans' homes. T.F. testified without objection that she and Evans smoked marijuana together when she was at Evans' house on April 28, 1996. T.E. also testified that she "smok[ed] weed" while living in Evans' house. Given these other references to drug use by Evans and others, as well as the court's curative instructions regarding the unresponsive answer at issue, we find no reasonable probability that counsel's failure to renew the motion for mistrial prejudiced Evans' defense. In short, Evans has not shown that T.F.'s reference to "a lot of dope" in the house impacted the jury's verdict or that the trial court would have granted a mistrial but for counsel's failure to renew the motion.[23] It follows that this claim of error lacks merit.
Judgment affirmed.
ELDRIDGE and ADAMS, JJ., concur.
NOTES
[1] See Brewster v. State, 261 Ga.App. 795(1), 584 S.E.2d 66 (2003).
[2] See id.
[3] See id. at 797(1)(a), 584 S.E.2d 66.
[4] OCGA § 16-6-2(a).
[5] Id.
[6] Brewster, supra at 797(1)(b), 584 S.E.2d 66.
[7] See id.; Bright v. State, 244 Ga.App. 23, 25(1), 535 S.E.2d 14 (2000).
[8] OCGA § 16-11-37(a).
[9] See Drew v. State, 256 Ga.App. 391, 392(1), 568 S.E.2d 506 (2002).
[10] Id. at 393, 568 S.E.2d 506.
[11] See OCGA § 16-11-37(a); Drew, supra (victim's testimony regarding defendant's violent behavior sufficiently corroborated police officer's testimony that he heard defendant threaten victim's life, even though victim did not hear threat); Stone v. State, 210 Ga.App. 198, 199, 435 S.E.2d 527 (1993) (testimony of several witnesses that defendant was angry, violent, and verbally abusive before arrest sufficiently corroborated officer's testimony that, while officer was driving defendant to the police station, defendant threatened to kill him).
[12] See OCGA § 16-6-1(a)(1).
[13] OCGA § 16-6-1(a).
[14] See id.; Jenkins v. State, 259 Ga.App. 87, 88(1), 576 S.E.2d 68 (2003); Littleton v. State, 225 Ga.App. 900, 901(1), 485 S.E.2d 230 (1997).
[15] (Citation and punctuation omitted.) Harrell v. State, 204 Ga.App. 738(1), 420 S.E.2d 631 (1992).
[16] (Punctuation omitted.) Strozier v. State, 277 Ga. 78, 81(5)(a), 586 S.E.2d 309 (2003).
[17] Defense counsel acknowledged at trial that the charges involving T.F. and her sisters were "all intertwined," rendering a joint trial on those counts proper.
[18] In his brief, Evans asserts that the crimes against T.E. "allegedly occurred in Fulton County," rather than in Columbus. He has no record citation for this assertion, which is belied by T.E.'s clear testimony that Evans forced her to have sex with him at his homes in Columbus.
[19] See Scroggins v. State, 237 Ga.App. 122, 123-124(3), 514 S.E.2d 252 (1999); Harrell, supra at 738-739, 420 S.E.2d 631.
[20] See Strozier, supra; Sirmans v. State, 244 Ga.App. 252, 255-256(3), 534 S.E.2d 862 (2000).
[21] See Ford v. State, 269 Ga. 139, 141(3), 498 S.E.2d 58 (1998).
[22] Allen v. State, 277 Ga. 502, 503(3), 591 S.E.2d 784 (2004).
[23] See id. at 503(3)(a), 591 S.E.2d 784; Ingram v. State, 262 Ga.App. 304, 309(5), 585 S.E.2d 211 (2003).