## A07A2103. BRUMBELOW v. THE STATE.
### (657 SE2d 603)

SMITH, Presiding Judge.

Following a bench trial, the trial court found Christopher Brumbelow guilty of aggravated child molestation and two counts of child molestation.[1] Brumbelow appeals, asserting that he received ineffective assistance of counsel at trial. He also argues that the trial court erred in denying him his right to a jury trial and in admitting hearsay testimony. For reasons that follow, we affirm.

Viewed favorably to the verdict, the evidence shows that from mid-August 2001 through the beginning of February 2002, S. R. and her younger sister, L. R., lived with their biological father. Brumbelow, the father's brother-in-law, occasionally visited the home. The children and other relatives referred to Brumbelow as "Bubba."

In the summer of 2002, the Department of Family and Children Services placed the children in the care of Dorothy Roy, a family friend. Shortly after they began living with her, Roy noticed that the girls, who were then four and six years old, were acting out sexually. They also cried on days they were scheduled to visit with relatives, and S. R. stated that she did not want to attend the visits because "Uncle Bubba's there, and he does bad things." When Roy sought psychological help for the girls, both disclosed that Bubba had made them lick his "turtle," a term they used for penis. S. R. also reported that Bubba had "penetrat[ed] her" while she sat on his lap, and L. R. described "white stuff" coming out of his penis when she sat on his lap.

In addition to Roy's testimony, the State offered testimony from the girls' therapist, as well as a forensic interviewer who interviewed the children in January 2003. Both girls also testified. Although S. R. would not identify Brumbelow as "Uncle Bubba" at trial, she stated that Uncle Bubba made her sit on his private parts. L. R. asserted that Bubba made her touch his private parts on numerous occasions.

1. Brumbelow first argues that he received ineffective assistance of counsel at trial. Specifically, he asserts that trial counsel failed to adequately investigate his case and failed to object to hearsay testimony regarding the victims' abuse allegations. To succeed in this

---

[1] The court found him not guilty of a second count of aggravated child molestation.

claim, Brumbelow must demonstrate that trial counsel's performance was deficient and that, but for the deficiency, the outcome of the trial likely would have been different. See *Dukes v. State*, 285 Ga. App. 172, 174 (2) (645 SE2d 664) (2007).

(a) Brumbelow claims that trial counsel should have investigated and presented evidence at trial regarding a March 2002 forensic interview of L. R. The trial evidence shows that at some point in March 2002, L. R.'s father and stepmother took her to the hospital after finding blood in her panties. Thereafter, authorities conducted an investigation and referred L. R. to a forensic interviewer to explore whether she had been sexually molested. The report generated following that interview, however, was not introduced into evidence.[2]

The report, which is an exhibit to the hearing on Brumbelow's motion for new trial, does not mention Brumbelow. Instead, L. R. told the interviewer that two other individuals had "touched" her with a stick. According to the report, L. R. also denied any sexual abuse, and the interviewer concluded that she had possibly "been coached." Brumbelow now argues that trial counsel should have contacted the March 2002 interviewer, investigated the circumstances of the interview and L. R.'s related hospital visit, and sought introduction of the report at trial.

Brumbelow, however, did not call trial counsel or the March 2002 interviewer as witnesses at the new trial hearing. We do not know, therefore, whether trial counsel spoke with the interviewer or investigated the incident, and we cannot assume that he did not. We also have no insight into trial counsel's decisions regarding the interview report.

"[D]eciding what evidence to present or to forego in defending a client charged with a crime is a matter of strategy and tactics, and matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel." (Punctuation and footnote omitted.) *Dukes*, supra, 285 Ga. App. at 174-175 (2). Absent some evidence explaining trial counsel's rationale for declining to present the evidence, we presume the decision to be strategic. See id. at 175 (2). Brumbelow's failure to call trial counsel as a witness at the new trial hearing, therefore, raises the presumption that counsel strategically elected not to offer evidence relating to the March 2002 interview. See id.; *Allen v. State*, 281 Ga. App. 294, 296 (3) (635 SE2d 884) (2006).

---

[2] The State offered evidence regarding a different forensic interview conducted in January 2003.

On appeal, Brumbelow suggests that this decision, even if strategic, was patently unreasonable. But without trial counsel's testimony, we simply cannot evaluate this claim, which relates to matters outside of the record. See *Allen*, supra, 281 Ga. App. at 296 (3).

Moreover, we cannot agree with Brumbelow that the report and its coaching reference necessarily would have aided his defense. The interview report does not contain any allegations against Brumbelow that might have been "coached." Furthermore, although the report indicates that L. R. denied any sexual abuse, trial counsel elicited other evidence that L. R. disclosed no abuse at the time. Given this other evidence, trial counsel may have reasonably determined that introducing the interview report was unnecessary and might actually harm the defense by allowing the State to argue that L. R.'s *denial* of abuse was coached. Finally, as noted above, L. R. asserted during the March 2002 interview that two individuals other than Brumbelow had touched her with a stick. Trial counsel may have concluded that evidence of coaching with respect to those allegations would undermine the primary defense at trial: that the children were abused, but by someone other than Brumbelow.

In short, without the benefit of trial counsel's testimony, we must assume that counsel reasonably and strategically decided that the interview report and its coaching reference were more harmful than helpful to Brumbelow's defense. Brumbelow, therefore, has not shown that counsel was ineffective on this ground. See *Allen*, supra, 281 Ga. App. at 296 (3).

(b) Brumbelow also claims that trial counsel should have objected to certain testimony that, he contends, fell outside of the child hearsay requirements in OCGA § 24-3-16. Under that provision:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

OCGA § 24-3-16.

Brumbelow argues that counsel should have objected to Roy's testimony that the children referred to Brumbelow as "Bubba" because that statement did not describe any act of sexual contact or abuse. He further claims that counsel should have objected to the testimony of several witnesses who presented hearsay evidence of statements made by S. R. regarding the abuse suffered by her sister.

Even if these statements were not admissible under the child hearsay statute, we nonetheless find no ineffective assistance. Brumbelow told investigating officers that the children referred to him as "Uncle Bubba," and he confirmed this nickname through his own trial testimony. Roy's testimony therefore was cumulative of other evidence and harmless. See *Ingram v. State*, 262 Ga. App. 304, 309 (5) (585 SE2d 211) (2003). Brumbelow was not prejudiced by trial counsel's failure to object. See id.

We similarly find no ineffective assistance with respect to S. R.'s out-of-court statements regarding abuse suffered by L. R. The statements cited in Brumbelow's brief involve allegations of abuse not by Brumbelow, but by *other* individuals. We fail to see how the admission of such statements harmed him. Moreover, the record shows that many of these statements were elicited by defense counsel on cross-examination, possibly to bolster the defense claim that the children were abused by multiple individuals other than Brumbelow.

Brumbelow has not shown that the admission of these various statements resulted from trial counsel's errors or prejudiced his defense. Accordingly, he cannot demonstrate ineffective assistance of counsel. See *Evans v. State*, 288 Ga. App. 103, 109 (3) (b) (653 SE2d 520) (2007) (cross-examination that is consistent with reasonable trial strategy does not amount to ineffective assistance of counsel); *Holmes v. State*, 271 Ga. App. 122, 124 (3) (608 SE2d 726) (2004) (absent testimony from trial counsel, decisions regarding which objections to raise are presumed strategic and will not support an ineffective assistance claim).

2. Brumbelow argues that he did not knowingly and intelligently waive his right to a jury trial. We disagree.

The right to a jury trial cannot be waived unless the criminal defendant personally and intelligently participates in the waiver. See *Young v. State*, 273 Ga. App. 151, 153 (2) (614 SE2d 257) (2005). When the validity of a jury trial waiver is questioned,

> the State bears the burden of showing the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citation omitted.) Id.

Before trial began, Brumbelow's attorney stated that Brumbelow wished to waive his jury trial right and proceed with a bench trial. The trial court questioned Brumbelow, who confirmed that he wanted a bench trial. In response to further questioning, Brumbelow stated

that he had been given time to speak with his attorney about the choice, understood the meaning of his choice, and knew that the judge, not a jury, would decide his case. He also replied "yes" when asked whether he wanted the judge to "make the decision."

At the hearing on his motion for new trial, Brumbelow testified that he discussed the matter with counsel before trial because he was concerned about "the mentality of the people in Dawson County." According to Brumbelow, he was able to ask his attorney several questions about the waiver, but counsel did not discuss "the pros and cons" of a jury trial with him. Ultimately, trial counsel left the decision to him, after stating: "You've got a pretty good judge. She's let you out on bond three times. She's done pretty good."

Although the State offered no evidence that counsel discussed the issue at length with Brumbelow, it is clear that Brumbelow himself elected to proceed with a bench trial. The trial court informed him that the choice meant that the judge, not a jury, would decide his fate, and Brumbelow stated that he wanted the judge to make the decision. Moreover, Brumbelow was concerned before trial about the "mentality" of potential jurors, and the judge had made several rulings favorable to him with respect to bond.

"The question of whether a defendant knowingly and intelligently waives his right to a jury trial is a question for the trial judge, and this Court will accept that determination unless it is clearly erroneous." (Footnote omitted.) *Annaswamy v. State*, 284 Ga. App. 6, 8 (2) (642 SE2d 917) (2007). Under the circumstances of this case, we find no error in the trial court's conclusion that Brumbelow made a personal, knowing, and intelligent waiver of his right to a jury trial. See *Portilla v. State*, 285 Ga. App. 401, 404 (1) (646 SE2d 277) (2007); *Young*, supra, 273 Ga. App. at 155 (2).

3. Finally, Brumbelow claims that the trial court erred in admitting out-of-court statements by four-year-old L. R. under the child hearsay statute. Specifically, he claims that the statements lacked the necessary indicia of reliability given L. R.'s young age, her denial of any abuse during the March 2002 interview, inconsistencies in her statements, her exposure to significant abuse by others, and the possibility that she was coached.

Child hearsay evidence is admissible under OCGA § 24-3-16 if, "after both sides have rested at trial, competent evidence of record exists which will support a finding of 'indicia of reliability.' " *Gregg v. State*, 201 Ga. App. 238, 239 (3) (a) (411 SE2d 65) (1991). Several factors play into this analysis, including, among other things, the atmosphere and circumstances under which the child's statement was made; the spontaneity of the statement; the child's age, demeanor, and general credibility; the child's physical and emotional

condition; any threats or promises of benefit; the possibility of coaching; and consistencies or inconsistencies in the child's statements. See id. at 240 (3) (b). These factors, however, should not be applied mechanically, and the trial court has broad discretion in determining the admissibility of child hearsay evidence. See *Fiek v. State*, 266 Ga. App. 523, 524 (1) (597 SE2d 585) (2004); *Gregg*, supra, 201 Ga. App. at 241 (3) (b).

In denying Brumbelow's motion for new trial, the trial court noted that, after careful consideration of the various factors, it deemed L. R.'s out-of-court statements admissible. We find no error.

L. R.'s tender age certainly factored into the trial court's determination, but did not preclude admission of her statements. See *Tucker v. State*, 208 Ga. App. 441, 443 (430 SE2d 811) (1993) (approving admissibility of five-year-old child's hearsay statements); *Sanders v. State*, 182 Ga. App. 581, 584 (3) (356 SE2d 537) (1987) (statements by four-year-old victim admissible). Moreover, although it is not clear how much time passed between the abuse and L. R.'s statements, Roy testified that the children opened up to her once they began therapy and started to trust her. Roy further testified that before she took custody of the children, she attended parenting classes that provided guidance on how to speak with the children about difficult subjects like abuse, and she knew she should make only general inquiries, such as "what happened," rather than to ask specific questions.

L. R.'s therapist testified that, at one point, L. R. spontaneously stated that she did not want to visit her relatives because "Uncle Bubba" did mean things to her. The forensic interviewer who spoke with L. R. in January 2003 also asserted that she avoided leading questions during the interview; she did not use any information received prior to the interview to prompt L. R.; she saw no evidence that L. R. had been coached; and any inconsistencies in L. R.'s retelling of the events were typical for a four-year-old child. In addition, L. R. testified at trial, providing Brumbelow an opportunity to cross-examine her regarding her reports of abuse.

Given the totality of the circumstances, the trial court did not abuse its discretion in finding sufficient indicia of reliability to admit L. R.'s hearsay statements. See *Fiek*, supra, 266 Ga. App. at 525 (1); *Tucker*, supra, 208 Ga. App. at 443. Although Brumbelow now claims that the March 2002 interview report raises questions about coaching and the reliability of the statements, the report was not introduced into evidence at trial. Furthermore, he has cited no authority for using a document that was never tendered or admitted at trial to attack the admissibility of child hearsay, which is based on the state of the trial record after both parties rest. See *Gregg*, supra, 201 Ga. App. at 239 (3) (a).

Finally, we note that the March 2002 interview and report were generated before L. R. came into the care of Roy, whom she grew to trust and to whom she eventually disclosed the abuse. Even if the report could be considered in the hearsay analysis, therefore, we cannot agree with Brumbelow that its contents necessarily precluded a finding of reliability. Accordingly, the trial court did not err in exercising its broad discretion to admit L. R.'s out-of-court statements.

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED FEBRUARY 7, 2008.

*Nathanael A. Horsley*, for appellant.

*Lee Darragh, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney*, for appellee.