**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 13, 2014**

# In the Court of Appeals of Georgia

A14A1185. HENDRIX v. THE STATE.

RAY, Judge.

A jury convicted LaMonte T. Hendrix of one count each of aggravated assault (OCGA § 16-5-21 (a) (2))[1]; family violence battery (OCGA § 16-5-23.1 (f)); family violence simple battery (OCGA § 16-5-23 (f)); third-degree cruelty to children (OCGA § 16-5-70 (d)); misdemeanor fleeing and attempting to elude (OCGA § 40-6-395); and driving with a suspended license (OCGA § 40-5-121). He was sentenced as a recidivist pursuant to OCGA § 17-10-7 (c). Hendrix filed this out-of-time appeal from the denial of his motion for new trial. On appeal, Hendrix contends that the trial court erred in finding that the State had proven that a table he threw at the victim was

---

[1] OCGA § 16-5-21 was amended effective July 1, 2014. See Ga. L. 2014, Act 575, §2-2; Act 576, §§ 2, 3; and Act 604, § 3-1. Thus, we apply the prior version of the statute, Ga. L. 2011, Act 245, § 16, effective May 13, 2011.

a deadly weapon pursuant to OCGA § 16-5-21. He also argues that he received ineffective assistance of counsel. For the reasons that follow, we affirm.

Viewed under the standard laid out in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that Hendrix lived with his mother, Janice Mills, and her two grandchildren, J. T. and O. M. On July 19, 2010, Hendrix and his mother got into an argument when she refused to let him borrow her van. Hendrix poured water on his mother and called her a "stupid bitch." Mills' ex-husband, Hosa Mills, was in the home and came into the room where Hendrix and Janice Mills were arguing. Hendrix was pouring water on his mother and had his hand on her. Hosa Mills told him to stop, and Hendrix punched Hosa Mills in the side of his eye, causing him to fall through and break the glass top of a metal coffee table. While Hosa Mills was still on his knees, Hendrix lifted the coffee table's 10-to-12-pound metal frame over his head and threw it down at Hosa Mills, who blocked the blow with his arm. Janice Mills then gave Hendrix the van keys because she was concerned that things between her ex-husband and her son might get "a little rougher[.]" J. T., who was 14 or 15 years old, then locked the door behind Hendrix and called 911. A police officer who heard a "Be On the Lookout" spotted Hendrix driving the van, and he turned on his blue lights and siren. Hendrix did not stop. After

2

following Hendrix for nearly two miles, the officer was able to block the van and arrest Hendrix.

1. Hendrix argues that the trial court erred in determining that the State met its burden of proving that the table Hendrix threw was a "deadly weapon" or "dangerous weapon."

OCGA § 16-5-21 (a) (2) provides that "[a] person commits the offense of aggravated assault when he or she assaults: . . . [w]ith a deadly weapon *or* with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" (Emphasis supplied.) The indictment accused Hendrix of assaulting Hosa Mills "with a table, an object which, when used offensively against a person is likely to result in serious bodily injury, by throwing the table frame at the victim[.]" It did not accuse Hendrix of using the table as a deadly weapon, so Hendrix's contention on this point is without merit.

As to whether the table was dangerous and likely to cause serious injury when used offensively, it is well settled that when an object is not considered an offensive weapon per se, a jury must determine whether the State has shown that the circumstances under which the object was used caused it to function, when used offensively, in a way likely to result in serious bodily injury. *Scott v. State*, 243 Ga.

3

App. 383, 385 (1) (d) (532 SE2d 141) (2000) (jury question as to whether hands and fists constituted objects likely to result in serious injury).

> The term offensive weapon . . . includes not only weapons which are offensive per se (such as firearms loaded with live ammunition), but also other instrumentalities not normally considered to be offensive weapons per se which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use.

(Citation and punctuation omitted.) *Livery v. State*, 233 Ga. App. 882, 884 (1) (506 SE2d 165) (1998). This Court has determined that a variety of objects, which are not weapons per se, may be likely to cause serious bodily injury when used offensively, depending upon the circumstances in which they are used. See *Talley v. State*, 137 Ga. App. 548, 550 (1) (b) (224 SE2d 455) (1976) (lamp); *Simmons v. State*, 149 Ga. App. 830, 831-832 (2) (256 SE2d 79) (1979) (beer bottle); *Banks v. State*, 169 Ga. App. 571, 571-572 (1) (314 SE2d 235) (1984) (ceramic statute); *Gough v. State*, 236 Ga. App. 568, 569 (1) (512 SE2d 682) (1999) (hammer).

One law enforcement officer testified that if someone Hendrix's size threw a table at him, he would fear "substantial bodily injury" and would use deadly force to protect himself. Hosa Mills testified that he was concerned that he would be injured by the table. Although Hendrix points out that there was conflicting testimony about

4

the weight, sturdiness, and manner in which the table broke, witness credibility issues are for the jury and the jury's verdict must be upheld so long as there is "some competent evidence, even though contradicted, to support each fact necessary for the State's case[.]" *Scott*, supra at 384 (1) (a). Viewed in the light most favorable to the verdict, a rational jury could find beyond a reasonable doubt that Hendrix used the table offensively in a way likely to cause serious bodily injury. *Jackson*, supra. This enumeration is without merit.

2. Hendrix argues that the trial court erred in denying his motion for new trial as he contends that his counsel was ineffective. We disagree.

> To prevail on an ineffective assistance claim, Gordon
>
> was required to show both that his counsel's performance was professionally deficient and that but for counsel's unprofessional conduct, there is a reasonable probability [that] the outcome of the proceedings would have been different. . . . The likelihood of a different result must be substantial, not just conceivable. . . . [W]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Hill v. State*, 291 Ga. 160, 164 (4) (728 SE2d 225) (2012).

(a) Hendrix argues that his counsel was ineffective in failing to move for a directed verdict on the grounds that there was insufficient evidence to show that the table was used as a "deadly weapon." As we determined in Division 1, however, the evidence was sufficient to support the jury's verdict. "The failure to raise a meritless motion for a directed verdict, as a matter of law, is not ineffective assistance of counsel." (Citation and punctuation omitted.) *Jones v. State*, 310 Ga. App. 705, 709 (b) (713 SE2d 895) (2011).

(b) Hendrix contends that his counsel was ineffective in failing to investigate Hosa Mills' criminal history, and that if the jury had known of Mills' prior conviction for a violent felony, the jury would have given him less credibility as a witness and victim.

However, Hendrix did not call his trial counsel to testify at the motion for new trial hearing , and there is no evidence whatsoever regarding any investigation counsel may or may not have done. While, as Hendrix points out, counsel "has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary," *Wright v. State*, 292 Ga. 825, 827 (2) (742 SE2d 468) (2013) (citation and punctuation omitted), it is well settled that trial counsel's decision not to impeach a witness with a felony conviction is a matter of trial strategy.

6

*Strong v. State*, 308 Ga. App. 558, 561 (707 SE2d 914) (2011). Absent testimony to the contrary, counsel's actions are presumed strategic. *Brumbelow v. State*, 289 Ga. App. 520, 523 (1) (b) (657 SE2d 603) (2008).

Further, although Hendrix's new lawyer argued at the motion for new trial hearing that Hosa Mills had "a conviction in 1999," counsel did not state what Mills was convicted of and did not offer any evidence of the conviction. Hendrix also does not cite to any page in the record before us where such evidence exists. Hendrix failed to produce certified copies of the alleged conviction at the motion for new trial hearing to establish that Mills, in fact, had a criminal record that his lawyer could have found through investigation. Thus, Hendrix did not carry his burden of proving that counsel's performance was deficient. See *Bihlear v. State*, 295 Ga. App. 486, 488-489 (2) (b) (672 SE2d 459) (2009); see also *Rucker v. State*, 205 Ga. App. 651, 652 (423 SE2d 51) (1992) (evidence of a witness's prior conviction must be admitted as a certified copy; testimony alone is insufficient).

Hendrix has shown neither ineffectiveness nor prejudice, and this enumeration fails.

*Judgment affirmed. Andrews, P. J., and McFadden, J., concur.*