589 S.E.2d 335 (2003)
263 Ga. App. 782
McMILLIAN
v.
The STATE.
No. A03A1972.
Court of Appeals of Georgia.
October 24, 2003.
*336 Lon P. Kemeness, Tifton, for appellant.
C. Paul Bowden, Dist. Atty., Bradford L. Rigby, Asst. Dist. Atty., for appellee.
PHIPPS, Judge.
Danny McMillian was convicted on three counts of child molestation and on one count each of statutory rape and incest, based on allegations that, between specified dates in 1994 and 1998, he had fondled his stepdaughter's breasts and vaginal area and had engaged in sexual intercourse with her. Following denial of his motion for new trial, he appeals. He claims evidence insufficiency, abuse of discretion by the trial court in refusing to admit evidence of prior false allegations of molestation by the victim, ineffective assistance of trial counsel, and merger of offenses. Finding no merit in any of these claims, we affirm.
The victim, M.M., was born in 1985 and was 13 years old at the time of the 1999 trial. She testified as follows: On numerous occasions during the time period alleged in the indictment McMillian had fondled her vaginal area and breasts with his hands, and he had engaged in sexual intercourse with her on the bed in her and her sister's bedroom and on the couch in the living room. On one occasion he inserted his finger into her vagina while she was on her menstrual cycle and, on another occasion, he scratched her vaginal area with his fingernail. Once, he gave her $20. He told her not to tell anyone or she would get in trouble. The first time she complained to her mother about what was *337 happening, her mother confronted McMillian in M.M.'s presence. According to M.M., McMillian said "that he did not remember it happening but, if it did happen, he was sorry and it wouldn't never happen again...." But the sexual abuse continued. M.M. testified that when she again complained about what was happening, her mother became angry with her and "acted like it was my fault." M.M. later confided what was happening to her cousins, and the Department of Family and Children Services (DFACS) was alerted. When DFACS workers initially interviewed M.M., she denied that McMillian was abusing her because her mother had told her she would get in trouble if she said otherwise. Upon being interviewed again by DFACS workers and by the Georgia Bureau of Investigation (GBI), M.M. related what had actually happened.
V.B., one of the cousins to whom M.M. had confided the instances of abuse, testified that when she was in M.M.'s home, she observed McMillian and M.M. kissing and touching in ways she considered inappropriate. Prior to trial, M.M.'s sister, S.M., was interviewed by the same GBI agent who interviewed M.M. At trial, the GBI agent testified that S.M. told her that one night her stepfather had come into her and M.M.'s bedroom, that she had heard M.M. tell him to get off of her, and that she had then heard him say, "We don't want to wake Mama up." The GBI agent gave testimony concerning her interview with M.M. No one from DFACS testified. In her trial testimony, S.M. denied awareness of any sexual relations between McMillian and M.M.
1. McMillian contends that his convictions are without adequate evidentiary support because there was no physical or medical evidence; M.M.'s GBI interview was not audio-taped or videotaped; and there were inconsistencies in M.M.'s version of certain of the events as contained in her trial testimony, her out-of-court statement to her cousin V.B., and her out-of-court statement to the GBI.
There is no merit in McMillian's evidentiary challenge. "On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses."[1] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. [Cit.]"[2] "[The] evidence was sufficient under the standard of Jackson v. Virginia.[3] It was the function of the jury to resolve any conflicts between [M.M.'s] out-of-court statements and her trial testimony, as well as the credibility of the witnesses generally." [4] The absence of physical or medical evidence did not mandate an acquittal.[5]
2. McMillian contends that the trial court abused its discretion in refusing to admit evidence of prior false accusations of molestation by M.M.
Evidence of prior false accusations of sexual misconduct made by the prosecutrix is admissible to attack the credibility of the prosecutrix and as substantive evidence tending to prove that the instant offense did not occur. However, before evidence of a prior false accusation can be admitted, the trial court must make a threshold determination outside the presence of the jury that a reasonable probability of falsity exists. Defendants have the burden of coming forward with evidence at the hearing to establish a reasonable probability that the victim had made a prior false accusation of sexual misconduct. Finally, a trial court's ruling upon the admissibility *338 of such evidence will not be overturned absent an abuse of discretion.[6]
At the start of the trial outside the presence of the jury, M.M.'s 15-year-old cousin, D.M., testified that about two years before trial he had spent the night in the same bed with M.M. and her stepsister. According to D.M., the following day M.M. accused him of "messing" with her. M.M.'s mother testified that M.M. later told her that "it really didn't happen." M.M. testified that D.M. in fact had fondled her vaginal area on the night in question, and that she had told her stepsister who, in turn, had told her mother. Because her mother had not done anything about it, M.M. falsely told her that nothing had happened. At trial, D.M. was asked whether he had fondled M.M. on the occasion in question, and he responded that he was not sure and that "If I did, I didn't realize it because I was asleep." In light of M.M.'s explanation of why she had recanted her accusation against D.M., combined with D.M.'s equivocal denial of the accusation, the trial court found no credible evidence that the accusation was false. We can find no abuse of discretion.[7]
3. McMillian next complains of ineffective assistance of trial counsel.
At the hearing on McMillian's motion for new trial, his appointed trial attorney testified that at the time of trial he had been practicing law about nine years, probably 60 percent of his practice was criminal defense, he had defended about four or five prior child molestation cases, and he had adequate time to interview McMillian and prepare the defense in his case. McMillian claims that counsel was nonetheless ineffective in failing to cross-examine either M.M.'s sister (who appeared as a state's witness) or the investigating GBI agent, in failing to call any experts to testify at the guilt-innocence phase of the trial, and in failing to present mitigating evidence at the presentence hearing.
In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.[8]
"A charge of ineffective assistance of counsel is not judged by a standard of errorless counsel or by hindsight, but rather whether counsel rendered reasonably effective assistance; there is a critical distinction between inadequate preparation and unwise choices of trial tactics and strategy, which are not to be judged by hindsight or result. [Cit.]"[9] The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous.[10]
McMillian's trial counsel testified that his decision not to cross-examine M.M.'s sister and the GBI agent was a matter of trial strategy. On balance, the testimony given by M.M.'s sister was helpful to the defense. And although counsel did not cross-examine the GBI agent, he raised numerous objections to her testimony. McMillian has not shown how the defense was prejudiced by counsel's failure to cross-examine either witness. Nor has he proffered any favorable expert testimony or mitigating evidence that might have been presented by the defense. Under the circumstances, the court's determination that McMillian failed to *339 carry his burden of showing ineffective assistance of counsel is not clearly erroneous.
4. Finally, McMillian argues that one of his convictions of child molestation merged into the crime of statutory rape because the child molestation charge and the statutory rape charge were both based on the allegation that he had had sexual intercourse with the victim during the same time period.
Offenses may merge either as a matter of law or as a matter of fact.[11] The crimes with which McMillian was charged, i.e., child molestation and statutory rape, did not merge as a matter of law because they are separate legal offenses.[12] And because the victim reported at least two separate acts of sexual intercourse, one in her bedroom and one in the living room, it cannot be said that the convictions were based on the same conduct.[13] Consequently, the convictions did not merge as a matter of fact either.[14] Therefore, there was no merger of offenses.
Judgment affirmed.
BLACKBURN, P.J., and ELLINGTON, J., concur.
NOTES
[1] (Footnote omitted.) Collins v. State, 258 Ga. App. 400, 574 S.E.2d 423 (2002).
[2] Jackson v. State, 239 Ga.App. 77(1), 519 S.E.2d 746 (1999).
[3] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[4] (Footnotes omitted.) Childers v. State, 257 Ga. App. 377, 378(1), 571 S.E.2d 420 (2002).
[5] See Allen v. State, 263 Ga. 60, 428 S.E.2d 73 (1993); Childers v. State, supra; Heard v. State, 221 Ga.App. 166, 167(1), 471 S.E.2d 22 (1996).
[6] (Citations and punctuation omitted.) Kelley v. State, 233 Ga.App. 244, 251(5), 503 S.E.2d 881 (1998).
[7] See id.; compare Strickland v. State, 205 Ga. App. 473, 422 S.E.2d 312 (1992).
[8] (Citations and punctuation omitted.) Woods v. State, 275 Ga. 844, 846-847(3), 573 S.E.2d 394 (2002).
[9] Castleberry v. State, 274 Ga. 290, 294(4), 553 S.E.2d 606 (2001).
[10] Hamilton v. State, 274 Ga. 582, 587-588(13), 555 S.E.2d 701 (2001).
[11] Bellamy v. State, 243 Ga.App. 575, 581(5), 530 S.E.2d 243 (2000).
[12] See generally Messick v. State, 209 Ga.App. 459, 460(1), 433 S.E.2d 595 (1993); compare Smith v. State, 160 Ga.App. 26, 28(4), 285 S.E.2d 749 (1981) (where defendant is charged with multiple counts of the same offense, and neither different set of facts nor different dates are alleged, only one conviction can stand).
[13] Compare Coker v. State, 164 Ga.App. 493, 495(3), 297 S.E.2d 68 (1982).
[14] See id.