A05A0441. HENRY v. THE STATE.
(616 SE2d 883)

MIKELL, Judge.

After a jury trial, Timothy Jay Henry was convicted of two counts of aggravated sodomy, two counts of aggravated child molestation, one count of aggravated sexual battery, and four counts of child molestation. Henry was sentenced to 20 years to serve concurrently on each of the aggravated offenses, and 20 years on the remaining offenses to be served concurrently and consecutively to the sentence on the aggravated offenses. On appeal, Henry challenges the sufficiency of the evidence and the indictment, venue, the jury instructions, and an evidentiary ruling. Henry also argues that his aggravated sodomy and child molestation convictions should have been merged. For the reasons stated below, we affirm.

"On appeal from his criminal convictions, [Henry] no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict."[1] So viewed, the evidence shows that in 1995, after dating Brenda Edwards for several years, Henry moved in with Edwards and her three children: the victim, K. H., and her brothers, Jason and James (referred to herein as "J. H."). Henry and Edwards married in 1998. They separated in July 2002 and divorced in March 2003.

---

[1] (Footnote omitted.) *Chancey v. State*, 258 Ga. App. 716 (574 SE2d 904) (2002).

K. H., who was fourteen years old at the time of trial, testified that she was four or five years old when Henry first touched her inappropriately; that Henry touched her breasts, vagina, and her rear end with his hand and his penis; that between 1996 and 2002, he touched her more than fifty times; that he forced her to touch his penis with her hand and her mouth; that he would tell her to suck his penis and push her head down onto it until he ejaculated; and that the oral sex occurred more than fifty times between 1996 and 2002. K. H. also testified that he inserted his penis halfway into her vagina numerous times, that it was painful each time, and that the intercourse occurred less often than the oral sex. K. H. also recalled that Henry touched the outside of her vagina with his finger and inserted it into her vagina, which conduct also occurred less often than the oral sex.

J. H., who was 15 years old at the time of trial, testified that Henry was sometimes the only parent home with him and his siblings. J. H. recalled that a few months before Henry and his mother separated, he was standing about 20 feet from their bathroom window when he saw his sister preparing to enter the shower; that Henry told her to "give him a little blow"; that he saw Henry push his sister's head down; and that no one else was home when this incident occurred. Further, he explained that he did not confront Henry for fear that he would kick them out of the house. J. H. told his mother about the incident after she and Henry divorced.

Cynthia Ingram, a nurse practitioner at the Adcock Center for Women's Health, testified that she met K. H. on May 9, 2003, when the child was 13 years old. Ingram examined K. H. and found scarring on the outside of her vagina, which resulted from some type of invasion, and also discovered that K. H. had no hymen. Ingram's findings were consistent with penile penetration and sexual assault. She could not opine as to exactly when the injuries occurred but knew that they had not occurred recently.

Brenda Edwards testified that in May 2003, J. H. hinted that K. H. had been assaulted by Henry. Edwards questioned K. H. the next morning and K. H. only said that Henry had fondled her. She also recalled that K. H. had told her that Henry tuned the television to a pornography station in K. H.'s presence before she and Henry separated. A couple of days after she and K. H. talked, Edwards and K. H. told a counselor at K. H.'s school about the assaults, and the counselor contacted the Colquitt County Department of Family and Children Services ("DFACS").

Henry denied that he committed any of the acts for which he was charged. He testified that K. H.'s mother was using this case to retaliate for problems that she had with the terms of their divorce.

1. In his first enumerated error, Henry argues that the evidence only supported one of his two convictions for aggravated sodomy. Specifically, he maintains that the victim and her brother testified to only one act whereby Henry forced the victim's head onto his sexual organ. Henry contends that there was no other evidence of force or that the acts occurred against the victim's will. We disagree.

Pursuant to OCGA § 16-6-2 (a),

> A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another. A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years of age.

The term "force" includes physical force.[2] Although we cannot presume force merely because the victim is underage, "the amount of evidence necessary to prove force against a child is minimal."[3]

K. H. testified that Henry forced her to perform oral sex more than fifty times over a six-year period, during which time she was between seven and thirteen years of age. Therefore, the state was not required to prove force as to those assaults that occurred before the child reached the age of ten. However, even if we assume that the acts of sodomy occurred after K. H. reached the age of ten, the following evidence supported the convictions: the victim testified that she did not want to engage in oral sex; that Henry made her do it by pushing her head onto his private part; that she resisted when he pushed her head down; that on the occasions when she did not do what Henry asked, he would slap her in the face; and that she did not tell anyone because she was afraid.

2. Next, Henry argues that his convictions for aggravated sodomy and aggravated child molestation must be reversed because the offenses merged. Counts 1 and 2, charging aggravated sodomy, stated that Henry forced the victim to perform oral sex on two separate occasions and Count 3, child molestation, accused Henry of "perform-[ing] a sexual act involving [his] sex organ . . . and the mouth of another person . . . [at] a time and place separate and distinct from that alleged in Counts One and Two, above."

---

[2] See *Evans v. State*, 266 Ga. App. 405, 408 (1) (a) (597 SE2d 505) (2004).

[3] *Patterson v. State*, 242 Ga. App. 885 (531 SE2d 759) (2000), citing *Brewer v. State*, 271 Ga. 605, 607 (523 SE2d 18) (1999). Accord *Summerour v. State*, 242 Ga. App. 599, 600 (1) (530 SE2d 494) (2000).

> In determining whether a crime is established by proof of the same or less than all the facts required to establish the commission of another crime within the meaning of OCGA § 16-1-6, we look to the actual evidence introduced at trial. If the State uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6.[4]

In this case, the evidence demonstrates that Henry's convictions of aggravated sodomy and aggravated child molestation were supported by separate facts. As we discussed in Division 1 of our opinion, the victim testified to several separate sexual acts. Thus, "the evidence authorized the jury to find that more than one instance of sodomy [and molestation] occurred, permitting conviction for each offense based on separate occasions."[5] Therefore, the crimes did not merge, and the trial court was correct in sentencing Henry on each count.

3. In his third enumeration of error, Henry argues that his convictions must be reversed because the indictment provided a vague and ambiguous time frame in which the offenses occurred. Henry cites no authority in support of his asserted error but maintains that the victim's testimony, alone, was insufficient to establish the time frame.

"The general rule is that when the exact date of the commission of the crime is not a material allegation of the indictment, the commission of the offense may be proved to have occurred any time within the statute of limitations."[6] In this case, there is no statute of limitation issue. The victim's testimony, alone, was sufficient to establish the time frame.[7] Additionally, the fact that the indictment provided a six-year time frame does not render it insufficient.[8] Finally, as is required, the indictment informed Henry of the charges against him, enabled him to present his defense and not to be taken

---

[4] (Citation and punctuation omitted.) *Jimmerson v. State*, 190 Ga. App. 759, 762 (4) (380 SE2d 65) (1989).

[5] (Citation and punctuation omitted.) *Stander v. State*, 193 Ga. App. 212 (2) (387 SE2d 422) (1989). See also *McCollum v. State*, 177 Ga. App. 40 (1) (338 SE2d 460) (1985) (no merger allowed where, over a span of six years, the appellant relentlessly subjected his minor stepdaughter to countless episodes of molestation by performing acts of sodomy; thus, there were multiple, separate acts as bases for each conviction).

[6] (Punctuation and footnote omitted.) *Dean v. State*, 252 Ga. App. 204, 206 (3) (555 SE2d 868) (2001).

[7] OCGA § 24-4-8.

[8] See *Dean*, supra at 207 (4) ("defendant could have been convicted upon proof that he committed the crimes alleged between March 1991 and March 1998").

by surprise, and protected him against another prosecution for the same offense.[9] Thus, the indictment was not deficient.

4. Henry argues that his Sixth Amendment right to confront witnesses was violated when he was not permitted to cross-examine the school counselor to whom the victim and her mother first reported the incident. The record shows, however, that Henry did not indicate that he wished to examine the counselor.

During the hearing about the identity of the person who reported the abuse, defense counsel stated that they did not want the name of the person who contacted DFACS but only needed to know that person's position. After conducting a private meeting with Regina Dismuke, the DFACS employee who interviewed K. H., the court informed defense counsel that it would not divulge the name as the information would not be exculpatory to the defendant or lead to exculpatory information. Defense counsel did not object to the court's ruling. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further."[10] Thus, any alleged error premised on this ruling is waived. In any event, we agree with the trial court's ruling that the information sought was not relevant to the issues in the case.[11]

5. In his fifth enumeration of error, Henry argues that venue was not proven by the victim's testimony. This argument also fails.

In general, criminal actions are tried in the county where the crime was committed.[12] The victim's testimony that Henry committed these offenses in Colquitt County, even though he also committed some of them in other counties, was sufficient to establish venue.[13]

6. Lastly, Henry argues that the trial court erred by failing to recharge the jury that his statements or character witnesses could create reasonable doubt after they asked to review the videotaped interview of the victim and to rehear the instruction on reasonable doubt. This alleged error arises from the following colloquy that occurred at the bench after the jury was recharged on reasonable doubt:

---

[9] See *Greeson v. State*, 253 Ga. App. 161, 165 (4) (558 SE2d 749) (2002).

[10] (Citation and punctuation omitted.) *Smith v. State*, 259 Ga. App. 736, 739 (3) (578 SE2d 295) (2003).

[11] See generally *Ferguson v. State*, 221 Ga. App. 212, 218 (5) (470 SE2d 909) (1996) (no error occurred when trial court prevented defendant from questioning the doctor who reported abuse when there was no issue raised regarding the doctor's report and the victim's mother called the police on the ground that the testimony was not relevant to the issues in the case).

[12] OCGA § 17-2-2 (a).

[13] See *Green v. State*, 254 Ga. App. 549, 550 (562 SE2d 835) (2002).

[Counsel]: Judge, I think because the jury wanted a request on reasonable doubt again that we should also have one regarding how the Defendant's statements or his character witnesses could, in fact, be enough to create a reasonable doubt as well in the minds of an impartial juror.

The Court: His statement — Well, I think if ya'll request it at this time I would tell them that if they wish to be reinstructed on any of the instructions that I gave them yesterday, that I'll be happy to do that.

The bench conference concluded and no additional request for jury instructions was made. When asked about objections, defense counsel simply objected to the replaying of the videotape and the dynamite charge. We find no error.

"Generally, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court. And when the jury requests a recharge on a particular question, the trial court has discretion in whether to give additional instructions."[14] The court's initial instructions to the jury included the charge about which Henry now complains and the recharge on reasonable doubt was a sufficient response to the jury's question.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JUNE 30, 2005.

*William D. Edwards*, for appellant.

*J. David Miller, District Attorney, Brian A. McDaniel, Assistant District Attorney*, for appellee.

---

[14] (Citation omitted.) *Simmons v. State*, 271 Ga. App. 330, 332 (3) (609 SE2d 678) (2005).