## A08A1702. KELLEY v. THE STATE.
### (673 SE2d 63)

JOHNSON, Presiding Judge.

A grand jury indicted Deion Kelley for the offenses of aggravated sodomy and false imprisonment. A jury subsequently found him guilty of aggravated sodomy, but not guilty of false imprisonment. Kelley appeals, alleging the evidence was insufficient to support the jury's verdict and he received ineffective assistance of trial counsel. We find no error and affirm Kelley's conviction.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some competent evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that the victim, who was eight years old at the time of the incident, positively identified seventeen-year-old Kelley in court. She testified that sometime in June 2004, Kelley approached her while she was playing behind a vacant house. Kelley grabbed her arm and said, "Give me head." She did not know what that meant. Kelley then put his "private" in her mouth. She did not want to do it, but he made her and told her not to tell her sister or her mother. The victim repeatedly froze on the witness stand and admitted she was afraid of Kelley.

The victim's friend, who was seven years old at the time of the incident, testified that the victim told her a boy had grabbed her and made her suck his private part. The boy grabbed her hair and pulled her head downward. Later, when the two friends were walking on the street, the victim pointed at Kelley and told her friend, "That's the boy." The friend told her mother what had happened.

The victim's mother testified that her daughter told her a young man forced her to "put his private in her mouth." Since that time,

---

[1] *Henry v. State*, 274 Ga. App. 139 (616 SE2d 883) (2005).

[2] (Citation omitted.) *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *McMillian v. State*, 263 Ga. App. 782, 784 (1) (589 SE2d 335) (2003).

the victim has become clingy and withdrawn; she will not sleep by herself. The victim told her mother she was afraid of Kelley.

After the victim reported the incident to her mother, the victim's mother took her to the Georgia Center for Children. The clinical director of the Center, a trained psychologist, interviewed the victim. During the interview, the victim was nervous and covered her face with her hands a few times, but she did not disclose what had happened to her. The psychologist testified that children commonly do not report abuse immediately and are embarrassed about what happened. According to the psychologist, the victim's interview was consistent with a child who has been sexually abused.

The detective who investigated the case testified that he went to Kelley's house after learning that the victim had identified Kelley as the perpetrator. While the detective was speaking with Kelley's mother at the front door, Kelley walked up behind his mother and said, "I didn't touch that girl . . . I didn't have sex with that girl."

Kelley's mother testified that Kelley was in North Carolina visiting his aunt during the entire month of June. However, she admitted she never told the detective her son was in North Carolina during this time because the detective "didn't ask me." She also did not tell the prosecuting attorney during a conversation the week before trial that her son was not in Georgia during the time of the incident because he "didn't ask me." She claimed the first time anyone asked her if her son was out of the state when this incident happened was at the trial.

Kelley also testified that he spent the month of June at his aunt's house in North Carolina. He further testified that he never travels alone and is always with friends and family. According to Kelley, he made the statement to the detective at his door because he heard that the victim's older sister was telling people he had sex with the victim.

Kelley contends the evidence was insufficient to support his conviction for aggravated sodomy because the victim made no immediate outcry and there was evidence of animosity between Kelley and the victim's sister. However, the evidence of the victim alone was sufficient to authorize a guilty verdict.[4] A person commits the offense of sodomy when he "performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another."[5] And aggravated sodomy occurs when a person "commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years

---

[4] See *McKinney v. State*, 269 Ga. App. 12, 16 (2) (602 SE2d 904) (2004).

[5] OCGA § 16-6-2 (a).

of age."[6] The evidence was sufficient in the present case. Determining the credibility of witnesses is entirely within the province of the jury, and the jury in this case was within its right to believe the victim and disbelieve Kelley's alibi testimony.[7]

2. Kelley contends his trial counsel was ineffective in (a) failing to investigate the case, (b) failing to present an alibi defense, (c) failing to call witnesses for the defense, (d) failing to thoroughly cross-examine witnesses, and (e) failing to object to testimony of a state's witness. To prevail on a claim of ineffective assistance of counsel, a defendant must show two things: (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced the defense.[8] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[9] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[10] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result.[11] In addition, we will not judge a charge of ineffective assistance of counsel by a standard of errorless counsel or by hindsight, but rather whether counsel rendered reasonably effective assistance.[12]

(a) Kelley contends his trial counsel was ineffective for failing to properly investigate the case and prepare for trial. Specifically, he argues that both he and his mother told trial counsel that there were numerous witnesses who were at a party at their house and would testify that the victim was at the party and was not afraid of Kelley. These witnesses purportedly would have undermined the victim's trial statement that she was afraid of Kelley. However, the record shows that neither Kelley nor his mother gave trial counsel the names of these potential witnesses because "he didn't ask me." And trial counsel testified that he specifically asked Kelley and his mother if they knew of any favorable witnesses, and the only names provided included Kelley, his mother, and a teacher. Because there

---

[6] Id.

[7] *McKinney*, supra.

[8] *Fults v. State*, 274 Ga. 82, 83-84 (2) (548 SE2d 315) (2001).

[9] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[10] *Rucker v. State*, 271 Ga. 426, 427 (520 SE2d 693) (1999).

[11] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

[12] See *McMillian*, supra at 785 (3).

was evidence that trial counsel was not informed of the alleged witnesses, his performance cannot be deemed deficient.[13]

In addition, Kelley has shown no prejudice by trial counsel's failure to call these witnesses. None of the potential witnesses who testified at the motion for new trial hearing actually testified about what allegedly happened at the party; they simply testified about Kelley's alleged alibi and whether the victim's sister disliked Kelley. Absent a proffer regarding the testimony these witnesses would have supplied about the party and the victim's lack of fear, Kelley cannot demonstrate how counsel's failure to call these witnesses to testify about the party likely affected the outcome of the case.[14]

(b) Kelley asserts his trial counsel was ineffective for not presenting an alibi defense. The circumstances surrounding this purported alibi defense were hotly disputed at the motion for new trial hearing.

According to Kelley and his mother, they met with trial counsel at a Burger King two days before trial. At this meeting, they were given a discovery packet that included a copy of Kelley's indictment. Both Kelley and his mother claimed this was the first time they discovered that the indictment alleged the incident took place between June 1 and June 30, and at that point the mother notified trial counsel that Kelley was in North Carolina with his aunt during the entire month of June. Kelley's mother testified that she had always thought the crime was alleged to have happened in July, and she did not even know what her son was charged with until she received the discovery packet two days prior to trial. Kelley's mother further testified that she was not allowed to sit in court during her son's arraignment and at other hearings.

Kelley testified at the motion for new trial hearing that he did not know the charge to which he was pleading not guilty at the arraignment. He did not know the exact charges until two days prior to trial when he received a discovery package from trial counsel.

Despite the testimony of Kelley and his mother at the motion for new trial hearing, a number of facts in the record contradicted their testimony. At trial, Kelley's mother testified that she had been preparing for her son's trial by keeping a log of events for two to three years. And Kelley testified that his mother is very involved in his life and wants to know what is going on. In fact, his mother

---

[13] See *Callaway v. State*, 247 Ga. App. 310, 320 (6) (a) (542 SE2d 596) (2000) ("A client cannot simply withhold relevant information within his knowledge, of which his attorney would have no reason to be aware, and then claim that the attorney was ineffective for failing to discover such information on his own.").

[14] See *Brown v. State*, 257 Ga. 277, 279 (2) (d) (357 SE2d 590) (1987); *Andrews v. State*, 275 Ga. App. 426, 434 (3) (b) (620 SE2d 629) (2005).

actually handled Kelley's prior juvenile court cases; trial counsel was merely "good for show for the judge."

In addition, trial counsel testified at the motion for new trial hearing that he communicated with both Kelley and his mother because of Kelley's age, that both were present during Kelley's arraignment and other hearings, that Kelley's mother was "very involved," and that he went over the discovery with Kelley prior to trial. Trial counsel specifically testified that he did *not* speak with either Kelley or his mother two days prior to trial, he never met them at Burger King, and he was not informed until the first day of trial about two alleged witnesses in North Carolina. In fact, according to trial counsel, he was not aware of a potential alibi defense until Kelley and his mother testified at trial; neither informed him prior to that time that Kelley was in North Carolina during the time alleged in the indictment. Trial counsel further testified that both Kelley and his mother were present during the pretrial hearing four days prior to trial.

The trial court, having heard all the evidence, concluded that trial counsel "did not file a notice of alibi in Defendant's case because neither Defendant nor his mother, who was very involved in her son's case, ever told him that there was an alleged alibi until the first day of Defendant's trial." The evidence supports the trial court's finding. "It is the function of the trial court at the hearing on the motion for new trial to determine witness credibility and to resolve any conflicts in the testimony."[15] Kelley has not shown that the trial court's finding of effective assistance was clearly erroneous.[16]

(c) Kelley also contends trial counsel was ineffective for failing to call a witness to testify about the bad relationship Kelley had with the victim's sister. First of all, Kelley's trial counsel testified that neither Kelley nor his mother ever told him about this alleged witness, and trial counsel would have had no reason to know about the witness, so he cannot be deficient for failing to present the witness' testimony at trial.[17]

In addition, Kelley has failed to show any actual prejudice. Kelley testified at trial that he and the victim's older sister did not like each other and that he tried to have a friend beat up the older sister, so any additional evidence regarding the animosity between Kelley and the victim's older sister would have been cumulative.

(d) Kelley contends trial counsel was ineffective because he asked the victim and the state's other witnesses very few questions

---

[15] (Citation omitted.) *Finch v. State*, 287 Ga. App. 319, 321 (1) (b) (651 SE2d 478) (2007).

[16] See *Callaway*, supra.

[17] See id.

during cross-examination. However, with respect to the victim, trial counsel testified at the motion for new trial hearing that he tries to avoid being too harsh with child victims so the jury does not take a negative view of the defense. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel."[18]

Moreover, with respect to the other witnesses, Kelley "has not cited to any evidence which could have been used to impeach these witnesses, nor does he suggest any other questions which counsel should have asked these witnesses in order to attack their credibility."[19] Trial counsel was not ineffective on this ground.

(e) Kelley contends trial counsel was ineffective because, although the parties invoked the rule of sequestration, trial counsel consented to allowing the victim's older sister to sit near the victim as she testified. According to Kelley, the older sister's presence "may have influenced the [victim's] testimony" because the victim was unable to testify until her older sister was called in.

The record reveals that trial counsel agreed to this suggestion after being told by the state that the older sister was not going to testify. The trial court instructed the jury about the victim's sister sitting next to her and, even with the sister's presence, the victim spoke very little during her testimony that day. When the victim was recalled to the stand the following day, without her sister being present, the victim testified more fully about the incident. Kelley has failed to show that the older sister influenced the victim's testimony or that trial counsel was ineffective for allowing the sister to sit by the victim while she testified.

Kelley further contends that trial counsel was ineffective for not objecting when the state subsequently called the older sister to testify as a rebuttal witness. Again, we find no error. The record shows that after Kelley testified that the older sister did not like him and he had tried to get another friend to fight the older sister, the state called the older sister as a rebuttal witness to testify that Kelley had flirted with her, which Kelley had denied, but that they were no longer friends.

Trial counsel objected after the older sister's testimony, claiming that it was error to allow the sister to testify after she had been in the courtroom during the victim's testimony. However, the trial court correctly overruled the objection since the older sister was a rebuttal witness.[20] So, not only did trial counsel object to the testimony, but

---

[18] (Citation omitted.) *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003).

[19] *Cail v. State*, 287 Ga. App. 547, 552 (3) (652 SE2d 190) (2007).

[20] See *Keller v. State*, 221 Ga. App. 846, 848 (3) (473 SE2d 194) (1996) (violation of the

the objection was properly overruled. Trial counsel was not ineffective in this regard.

(f) Kelley claims the combined effects of trial counsel's errors should be considered together as one issue with regard to whether Kelley was prejudiced.[21] However, for the reasons outlined in Division 2 (a), (b), (c), (d), and (e), there is no merit to Kelley's claim that the adverse outcome of his case is a result of the effects of combined professional errors by his trial counsel.[22]

The trial court found that Kelley's trial counsel was effective, and that finding is not clearly erroneous. The record shows that Kelley's trial counsel was an experienced criminal defense attorney who had handled more than one thousand felony trials. In addition, trial counsel had previously represented Kelley and Kelley's father in unrelated cases and had represented Kelley during the juvenile court portion of this case. Trial counsel also successfully obtained an acquittal of the false imprisonment charge. "This circumstance strongly supports the conclusion that the assistance actually rendered by [Kelley's] trial counsel fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render."[23]

Moreover, Kelley has failed to affirmatively show that any purported deficiencies were not examples of a conscious and deliberate trial strategy or the result of Kelley's failure to provide trial counsel with relevant information.[24] On the contrary, Kelley's trial counsel was so successful that Kelley was acquitted on one of the two counts against him.[25] The evidence is insufficient to compel a finding that Kelley's trial counsel's assistance was deficient or that any deficiency of trial counsel prejudiced Kelley's defense. The trial court, therefore, did not err in denying Kelley's motion for a new trial on the ground of ineffective assistance of trial counsel.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED JANUARY 26, 2009 — 

*Brown & Gill, Angela B. Dillon*, for appellant.

---

sequestration rule goes to the weight and credibility of the witness' testimony, not her competence to testify).

[21] See *Schofield v. Holsey*, 281 Ga. 809, 811-816 (642 SE2d 56) (2007).

[22] See *Stanley v. State*, 283 Ga. 36, 41 (2) (d) (656 SE2d 806) (2008).

[23] (Citation omitted.) *Caylor v. State*, 255 Ga. App. 362, 363 (566 SE2d 33) (2002).

[24] See *Callaway*, supra; *Garrett v. State*, 196 Ga. App. 872, 873-874 (1) (397 SE2d 205) (1990).

[25] See *Garrett*, supra at 874 (1); *Owens v. State*, 207 Ga. App. 153, 155 (1) (427 SE2d 529) (1993).

*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.