**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 7, 2013**

# In the Court of Appeals of Georgia

A13A1271. LEOPOLD v. THE STATE.

BOGGS, Judge.

Neil Leopold appeals from his convictions for possession of marijuana and possession of marijuana with intent to distribute. He contends that he received ineffective assistance of counsel and that he was denied his constitutional right to a speedy trial. For the reasons explained below, we find no merit in his ineffective assistance of counsel claim, but we remand this case to the trial court for entry of a more detailed order weighing the factors outlined in *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972).

1. Leopold asserts that he received ineffective assistance of counsel because his trial attorney: (a) failed to review the State's file on Junior Blackford, who was arrested for the same incident giving rise to charges against Leopold; (b) failed to

obtain, and impeach Blackford with, certified copies of his prior felony convictions in Georgia and New York; (c) abandoned a previously filed defense motion requesting an NCIC report on all of the State's witnesses; (d) failed to investigate and cross-examine Blackford about his risk of deportation; (e) conducted no investigation as to whether Blackford could received packages at the hotel where he lived at the time of the incident; (f) failed to investigate and cross-examine Blackford about his flight to New York for more than two years.

> To establish ineffectiveness, [Leopold] must show (1) that counsel's performance was deficient, and (2) that this deficiency so prejudiced his defense that a reasonable possibility exists that the trial's result would have been different but for that deficiency. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.

(Citations, punctuation and footnotes omitted.) *Lovelace v. State*, 241 Ga. App. 774, 775 (3) (527 SE2d 878) (2000).

In order to evaluate Leopold's ineffectiveness claims, we must examine the State's evidence, defense counsel's cross-examination of Blackford, and the evidence presented in the motion for new trial hearing. The record shows that police officers learned that a package traveling to Georgia from Arizona might contain marijuana.

2

After confirming the presence of marijuana through a canine free air search and a subsequent search warrant, the police organized a controlled delivery of the package which was videotaped.

The package was addressed to Gary Williams at a specific Covington, Georgia address – the home of Leopold's cousin. The video first shows Leopold sitting in the driver's seat of a white sedan parked in the driveway of the delivery address. After sitting in the car with the driver's door open for approximately 24 seconds, Leopold got out and paced around the driveway while periodically looking toward the street. He then walked toward the end of the driveway to meet an investigator with UPS, dressed as a delivery driver. The video shows a light rain during the delivery of the package.

The UPS investigator testified that he told Leopold that he had a package for Gary Williams and asked if he lived there and whether it was the correct address. Leopold stated that it "was the correct place and . . . that [Gary Williams] was just down the street and was going to be right back." The video shows Leopold pointing down the street while talking with the investigator. The investigator decided to leave the package beside the front door, and the video shows Leopold walking with him to the front door and pointing out a place to put the package.

3

As the investigator walked away, Leopold stayed near the package without touching it while the investigator walked back to his UPS truck and drove away. After the UPS truck drove away, Leopold picked up the package, but then placed it behind a red sedan backed into the driveway that was parked beside the white sedan. He then walked back to the white sedan and got into the driver's seat again.

While the UPS truck drove past again after having turned around in a cul-de-sac, a black sedan pulled up and parked on the street near the white sedan. Leopold walked over to the black sedan and spoke to the front passenger. Two men, Blackford and Raymond Cornelius, then got out of the black sedan. While the driver, Cornelius, walked around the driveway talking on a cell phone, Leopold picked up the package and placed it in the back seat on the driver's side of the white sedan. After talking with Blackford while standing behind the white sedan, Leopold opened the trunk and placed the package in it. Cornelius then walked over and the three men and had a discussion while arranging the contents of the trunk. After the trunk was closed and Leopold got into the driver's seat of the white sedan with keys in his hand, police officers moved in and arrested him. Blackford, who had been outside the car looking around, fled before but was captured. The package contained four pounds of marijuana.

Leopold gave a statement to police in which he claimed that he did not know what was in the package. He explained that Blackford offered him "a couple of dollars" to let him have a package delivered to his address.[1] Leopold explained that he "felt funny" about it and "questioned Blackford about it . . . was the police going to come and get us." Leopold stated that Blackford told him not to worry. Leopold also told the police that he was hesitant to physically touch the package because he felt something was wrong. Leopold did not testify during his trial.

Cornelius told the police following his arrest that the white sedan belonged to Leopold. At trial, he testified that the day of the delivery, Leopold called to ask him for a ride from the Covington address to his girlfriend's house in Decatur. Cornelius testified that he did not know whether Leopold had a car that day. When he arrived, a person he knew as "Blacks" was also there and he offered to buy Cornelius some beer for his birthday. Cornelius and Blacks left together, and Leopold stayed behind because the back seat of Cornelius' car was wet.

Cornelius testified that when they returned, Blacks asked Leopold if his mail had arrived. When Cornelius asked "what mail," Blacks told him that he was

---

[1] A police officer testified that "a couple of dollars" in "street slang" actually means $200 and that he confirmed with Leopold that he meant $200.

5

"supposed to get some personal items" that he needed to get a job because he "was living from hotel to hotel." According to Cornelius, Blacks instructed Leopold to put it in the backseat, but "then he said no, I'm going to put it in the trunk, so he put it in the trunk." Cornelius explained that when the three of them were seen in the video standing behind the trunk, they were discussing how to fit the package in the trunk because Blacks had large speakers stored inside it. Although he was initially arrested, Cornelius was not charged with an offense for his conduct.

Blackford testified for the State pursuant to an order granting him use and derivative use immunity. He testified that he was from Jamaica, was not a United States citizen, has been in the United States since 1979 living in New York, and was visiting Georgia and staying in a hotel at the time of his arrest. He testified that he met Leopold while they worked at a restaurant together and that on the day of the incident, Leopold drove him to the country in a white car. He denied asking Leopold to use his address for delivery of a package and claimed that he could receive mail at the hotel. He testified that he had no knowledge of the package until he saw Leopold with it at the house after returning from the store to buy beer.

During cross-examination, defense counsel asked 25 questions and established that Blackford had received immunity in exchange for his testimony, that the white

6

car did not belong to Leopold or Blackford, and that Blackford ran away from the police officers when he saw them. During redirect, Blackford testified that he ran away because he "was drinking and smoking and . . . kn[e]w [he] had a little thing with the immigration . . . just got nervous and . . . ran." He admitted that he was concerned about his immigration status if he was arrested.

The State presented evidence of a 2005 similar transaction in which Leopold pled guilty in Pennsylvania to possession with the intent to deliver a controlled substance (cocaine). At the time of that arrest, he also possessed a small quantity of marijuana and a large amount of cash.

One witness testified on behalf of the defense: Leopold's former girlfriend and the mother of Leopold's two children. She testified that a couple of days before Leopold's arrest, she heard Blackford ask Leopold if he could use his address for the delivery of some documents and personal items because he could not receive mail at his hotel. She testified during cross-examination by the State that Leopold primarily stayed in Covington at the time of his arrest. She admitted that she still considered him to be a good friend whom she would help if needed.

During closing argument, defense counsel emphasized that Blackford ran away from the police and that he had a motive to lie based upon his immigration issues

even though he had been offered immunity. She also pointed out that Blackford had a greater motive to lie than Leopold's ex-girlfriend. Additionally, in both opening and closing argument, the State acknowledged that Blackford was a codefendant charged with the same crimes as Leopold. The State also claimed that Blackford was lying when he testified he did not know anything about the marijuana in the package because he ran away when the police arrived.

During the motion for new trial hearing, defense counsel testified that she had been practicing law for less than a year at the time of this trial and Leopold's trial was her fifth. She explained that a chief assistant public defender sat with her at trial and helped her develop Leopold's defense. She testified that she was the seventh attorney in the public defender's office to handle Leopold's case, that it was assigned to her in July or August of 2009, and that the trial began on September 28, 2009.

Trial counsel testified that she worked many hours on Leopold's case and that she reviewed the State's file on Leopold, including the statement he gave to police. She testified that she made a strategic decision not to locate Blackford because he had been absent for two years and his absence worked in her client's favor. Counsel did not recall whether she was aware that Blackford was arrested in New York and transferred to Newton County custody five months before Leopold's trial. She did not

8

know his anticipated testimony before trial because he was represented by counsel and charges were still pending against him. Counsel knew from conversations with Blackford's attorney that his testimony would be generally harmful to Leopold. While she had no specific memory, she was certain she would have reviewed a statement Blackford gave to police four days before trial.

Trial counsel reviewed Blackford's criminal history in the GCIC because this information was included in the State's file on Blackford. She decided not to attempt to impeach Blackford with a felony burglary conviction because it was very old and she did not think the trial court would have admitted it based on her experience in the circuit with regard to the admission of convictions that were more than ten years old.

Counsel testified that at the time she reviewed the State's file, the portion available to her did not include an NCIC report that would have contained additional information about Blackford's criminal history in other states. She testified that the public defender's office generally does not have access to the NCIC and that it is difficult and expensive for the public defender's office to obtain copies of out-of-state convictions. The decision to seek such records would have been made by her superiors based upon whether it would have been a good use of resources.

9

Leopold's appellate counsel introduced into evidence information about Blackford's out-of-state criminal history that he had obtained from the State's file following Leopold's trial. This history includes: 1982 felony attempted burglary and burglary conviction; 1982 guilty plea to felony second degree robbery; 1982 guilty plea to misdemeanor possession of stolen property in the third degree; 1991 guilty plea to misdemeanor resisting arrest; May 1999 guilty plea to felony possession loaded firearm in the third degree; 2003 guilty plea to misdemeanor possession of marijuana in a public place; 2006 guilty plea to misdemeanor aggravated unlicensed operation of a motor vehicle; 2009 guilty plea to misdemeanor unauthorized use of a motor vehicle without the owner's consent.

Trial counsel did not contact anyone at the Immigration and Naturalization Service ("INS") about Blackford's immigration status or take any steps to determine whether he was at risk of being deported. She did not attempt to verify Blackford's residence through the postal service. She could not recall whether she learned before or after trial that Blackford was not a U. S. citizen.

Leopold's appellate counsel did not introduce any evidence in the motion for new trial hearing with regard to Blackford's risk of deportation or his ability to receive mail at the hotel where he was staying at the time of his arrest.

(a) Although Leopold asserts in his brief that his trial counsel was ineffective because she failed to review the State's file on Blackford, she testified during the motion for new trial hearing that she did review it and the trial court was entitled to believe her. See *Gould v. State*, 315 Ga. App. 733, 734 (1) (726 SE2d 432) (2012). Leopold has therefore failed to meet his burden of proving this claim of ineffective assistance. Id.

(b) We find no merit in Leopold's related ineffective assistance claims based upon trial counsel's failure to investigate and impeach Blackford with his prior criminal convictions or to obtain an NCIC report. The record shows that all of the felony convictions were more than ten years old, that the trial court would not have abused its discretion by concluding that the probative value of these convictions did *not* outweigh their prejudicial effect, and that none of the misdemeanor convictions involved fraud or deceit. See former OCGA § 24-9-84.1 (a) (2) and (3) and (b). "Because [Leopold] has failed to establish that the convictions would have been admitted, he has not shown that his lawyer[] [was ineffective]" on this ground. *Williams v. State*, 292 Ga. 844, 852 (3) (e) (742 SE2d 445) (2013) (rejecting ineffective assistance claim based on failure to impeach with prior convictions

11

because trial court would not have abused discretion in denying use of convictions). See also *Boatright v. State*, 308 Ga. App. 266, 271 (1) (c) (707 SE2d 158) (2011).

(c) Leopold asserts that his trial counsel should have investigated and cross-examined Blackford about his risk of deportation and his ability to receive packages at his hotel. The record, however, shows that Blackford admitted during direct examination by the State that he initially ran away from the police because he was concerned about his immigration status if he were arrested and trial counsel asserted during closing argument that he had a motive to lie based upon his "immigration issues." Additionally, in the motion for new trial hearing, Leopold failed to present the trial court with any additional evidence about Blackford's risk of deportation or his ability to receive packages at his hotel that trial counsel should have discovered and used during her cross-examination. We therefore conclude that he has failed to meet his burden of proving that counsel rendered ineffective assistance with regard to this claim. See *Boykins-White v. State*, 305 Ga. App. 827, 830 (2) (b) (701 SE2d 221) (2010) (ineffective assistance claim failed when defendant did not show reasonable probability that outcome would have been different if counsel had conducted additional investigation).

(d) In his remaining ineffective assistance claim, Leopold asserts that his trial counsel should have investigated Blackford's fugitive status and cross-examined him about his flight from Georgia for over two years to establish an inference of guilt on his part. See *Miller v. State*, 160 Ga. App. 832, 833 (3) (287 SE2d 679) (1982) (failure to appear for trial admissible as evidence of flight).

Trial counsel testified in the motion for new trial hearing that she made a strategic decision not to locate Blackford because she believed his absence worked in her client's favor and reciprocal discovery rules would have required her to inform the State of his whereabouts if she located him. She "did not know if he was under bond conditions or if he was out on bond and then left the jurisdiction. . . . So the first attorney that had it when Mr. Blackford left the jurisdiction I didn't have any contact with. So the information I had was based on what I had in the file." She acknowledged that she knew he had absconded, but she did not "know the circumstances surrounding his leaving the jurisdiction." Finally, counsel testified that she did not cross-examine him about his absence from Georgia because she had not investigated and "there was not really much I could speak to regarding his leaving the jurisdiction." The record before us shows that Blackford was "in bench warrant status" following his arraignment on February 1, 2007 through April of 2009.

13

"The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and footnote omitted.) *Kelley v. State*, 295 Ga. App. 663, 668 (2) (d) (673 SE2d 63) (2009). And "[a] claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." *Hooks v. State*, 280 Ga. 164, 165 (3) (626 SE2d 114) (2006). In this case, Blackford's testimony was impeached with evidence that he had received immunity from the State, that he had charges pending against him, that he had "immigration issues," and that he fled when the police attempted to arrest him. Trial counsel emphasized in her closing argument that he had a motive to lie, and the State argued in its closing argument that Blackford was lying about his lack of knowledge of the marijuana.

The Supreme Court has held that "[b]ecause, a fortiori, the presentation of some impeaching evidence, but not all of the impeaching evidence a counselor possesses, is stronger than failing to present any impeaching evidence at all, we find that counsel's performance in this regard was not deficient." *Simpson v. State*, 289 Ga. 685, 691 (8) (715 SE2d 142) (2011). We likewise conclude that counsel's performance was within the wide range of reasonable professional conduct and that

14

even if trial counsel had impeached Blackford with additional evidence of flight, there is no reasonable probability that the outcome of the trial would have been different. See *Boothe v. State*, 293 Ga. 285, 295 (4) (745 SE2d 594) (2013) (finding no prejudice resulted from counsel's failure to further impeach State's witness with prior conviction). We therefore affirm the trial court's denial of Leopold's ineffective assistance claim.

2. In his remaining enumeration of error, Leopold asserts the trial court erred by denying his constitutional right to a speedy trial. In *Higgenbottom v. State*, 288 Ga. 429 (704 SE2d 786) (2011), the Supreme Court of Georgia noted that appellate courts "review the denial of a defendant's constitutional speedy trial claim for an abuse of discretion. It is imperative, therefore, that in cases implicating a defendant's constitutional right to speedy trial, the trial court enter findings of fact and conclusions of law consistent with *Barker*. Absent such findings, there is no exercise of discretion for [an appellate c]ourt to review." Id. at 430-431. Following its decision in *Higgenbottom*, the Supreme Court reversed this court for "failing to remand a case to the trial court for it to exercise its discretion using adequately supported factual findings and the correct legal analysis." *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011).

In this case, the trial court's order[2] denying Leopold's speedy trial claim makes no factual findings, summarily addresses only two *Barker* factors, and states in its entirety:

> The Court also finds that in balancing the prongs and factors set out in *Barker v. Wingo*, 407 U. S. 514 (1972), the Court finds that Defendant has failed to meet his burden in showing that Defendant's constitutional right to a speedy trial has . . . been violated based on Defendant's failure to timely assert his right and failure to show actual prejudice for his defense.

Because of this cursory analysis of the *Barker* criteria, we must vacate the trial court's order and remand this case to the trial court for entry of the order required by the Supreme Court in *Higgenbottom*, supra. See *Jones v. State*, 322 Ga. App. 310, 312 (744 SE2d 830) (2013).

*Judgment affirmed in part and case remanded with direction. Doyle, P. J., and McFadden, J., concur.*

---

[2] The order was prepared by the State.